GEORGE F. GILMAN, *Appellant from a decree of the Judge of Probate, versus* JOANNA B. GILMAN.

The. allowance to a widow is to be determined by the law of the domicil of her husband.

By R. S., c. 63, § 24, the Supreme Court of Probate may reverse or affirm, in whole or in part, the sentence or act appealed from, pass such decree thereon as the Judge of Probate ought to have passed, remit the case to the Probate Court for further proceedings, or take *any* order therein that law and justice require.

An appeal from a decree of the Probate Court, fixing the amount of allowance to a widow, vacates the judgment appealed from; and the whole subject matter of the appeal is, without any statute restriction, open to the appellee in the Supreme Court of Probate.

Hence, where one of the heirs of a deceased person appealed from a decree of an allowance to the widow, for the reason that it was "excessive, unreasonable and not necessary, according to the degree and estate of her husband and the state of the family under her care;"— *Held*, that the Supreme Court of Probate might increase the amount decreed below, if, in its opinion, law and justice require it.

The circumstances to be considered in fixing the amount of an allowance.

ON REPORT from *Nisi Prius*.

APPEAL from the decree for an allowance by the Judge of Probate for the county of Kennebec, to the appellee, widow of the late Nathaniel Gilman.

The facts fully appear in the opinion.

*J. W. Bradbury*, for the appellant.

*W. B. S. Moore & J. Baker*, for the appellee.

APPLETON, C. J.—It was determined in *Gilman* v. *Gilman*, 52 Maine, 165, after a full hearing of all parties and upon satisfactory proof, that the domicil of the late Nathaniel Gilman was at the time of his death in Waterville in Kennebec county.

This Court has jurisdiction of the probate of the will of said Gilman, from the fact that his domicil, at the time of his death, was in this State. He deceased, too, in the place in which his domicil was established. The probate of the

will has been had in the Supreme Court of Probate. As is
well remarked by DENIO, C. J., in *Petersen* v. *Chemical
Bank*, 32 N. Y., 23, — " The succession to the personal es-
tate of a deceased person is governed by the law of the
country of his domicil at the time of his death. This is so,
whether the succession is claimed under the law providing
for intestacy or for transmission by last will or testament."
So, too, the allowance to the widow is to be determined by
the law of the domicil of the husband, where administration
is granted. Ancillary administration may be granted else-
where and wherever the estate of the deceased may be sit-
uated.

The Judge of Probate for Kennebec county, upon the
petition of the appellee, widow of said Nathaniel Gilman,
made her an allowance under the authority given him by
R. S., 1857, c. 65, § 13, and the statute of 1861, c. 22, § 1.

The appellant, one of the heirs at law of said Gilman,
and one of the executors of his will, appealed from the de-
cree of the Judge of Probate, making the allowance, for
the reason that the allowance granted was "excessive, un-
reasonable and not necessary, according to the degree and
estate of her husband and the state of the family under her
care." Other reasons were filed, but, as they were not re-
lied upon at the argument, they may be regarded as waived.

The appellant seasonably filed the reasons of his appeal,
gave the bond required by law and entered his appeal,
which was fully heard. Each party offered such proof and
adduced such argument as was respectively deemed neces-
sary and advisable. The case has been heard upon proof
and argument, and now the question is presented whether,
upon the appeal taken by the appellant, this Court can by
its decree finally determine, as to the parties to this litiga-
tion, the allowance to be made the appellee, and increase or
diminish that made by the Judge of Probate, if, in their
judgment, "law and justice shall require" it.

The general principle applicable to appeals, when they
are allowable, seem to be well settled. Either party may

appeal from an adverse judgment. Both parties may deem the judgment adverse and appeal therefrom. An appeal in all cases vacates the judgment appealed from.

When both parties appeal and only one enters his appeal, the cause is heard *de novo* upon new proofs and arguments. The amount of the judgment, thus vacated by the appeal, may be increased or diminished, or it may remain unaltered. If, as a measure of precaution, both parties enter an appeal, still there is but one cause and but one trial, in and by which the rights of all are finally heard and conclusively determined, subject to such exceptions as either party may allege.

By the statutes of 1821, c. 51, § 6, the Supreme Judicial Court is made the Supreme Court of Probate, and has appellate jurisdiction over all matters determinable by the Judges of Probate in their respective counties. By § 64 "any person aggrieved at any order, sentence, decree or denial of any Judge of Probate in any county, may appeal therefrom to the said Supreme Court of Probate, * * * and such appeal shall be *taken notice of and proceeded upon* at the next term of the Supreme Judicial Court," &c., &c.

This was not regarded as giving sufficient power over the subject matter. Accordingly, to remove all doubt, a new section was added to the chapter relating to the Court of Probate, in the revision of the statutes in 1841. By c. 105, § 33, " the Supreme Court of Probate may reverse or affirm, in whole or in part, the sentence or act appealed from, and may pass such decree thereon as *the Judge of Probate ought to have passed;* and may remit the case to the Probate Court for further proceedings, or *may take any order therein, as law and justice shall require.*" This provision is retained in the revision of 1857, c. 63, § 24, with hardly a verbal alteration and without any change in its meaning.

The section just referred to is entirely inconsistent with the idea that the Supreme Court of Probate may not, upon appeal, correct any error which was adverse to the appellee in relation to the subject matter of the appeal, and, in

the case at bar, refers only to the amount of the allowance. On the contrary, it implies that the whole subject matter is before the Court, and that it is its duty to correct any and all errors shown at the hearing to exist.

The appellant is heard on new proofs and arguments. The rights of the appellee in this respect are the same as those of the appellant. In this case, then, the question of the allowance to be granted the appellee is before the appellate tribunal at the instance of the appellant. The judgment of the Probate Court, by his act, has been vacated. A new judgment is to be rendered in this Court. Why not then, while confining the appellant to the reasons of his appeal, and limiting the decision on his side by those reasons, regard the case as open on the part of the appellee, and thus upon one hearing finally determine the rights of all parties? Why require two hearings when one will suffice? Why divide the question of an allowance and hear one party, on his appeal, as to whether it is too large and his adversary, on his appeal, as to whether it is too small? Why not hold, upon an appeal by either party, that as to the appellee the judgment is vacated, and that the whole question on his part is before the Court, while on that of the appellant, it is limited by the reasons of appeal?

The very language of the statute confers the most ample authority on the appellate Court. It " may pass *such decree thereon as the Judge of Probate ought to have passed,* remit the case to the Probate Court for further proceedings, *or take any order therein, that law and justice require.*" This Court is to decree what the Judge of Probate ought to have decreed. But the decree of this Court may be upon an entirely different state of facts, from those presented for the consideration of the Probate Court. This Court is to decide upon the proofs and argument presented. It is to do what upon the same evidence the Court of Probate should have done. It is to " take any order therein that law and justice require." But it cannot do this if there be restrictions prohibiting its action in one direction. But there

are restrictions if its freedom of judgment is in any way limited or interfered with. The right to decree as law and justice may require, is unlimited so far as relates to the appellee. While there are restrictions on the part of the appellant, and he is limited by the reasons of appeal as assigned, the statute imposes no restraint upon the action of the Court upon the subject matter of the appeal, so far as relates to the correction of any errors injurious to the appellee, in the decision of the Court from which the appeal is taken. The original judgment having been vacated by appeal, a new one is to be rendered, such " as law and justice may require," and that upon the whole evidence. Any other construction would prevent and prohibit the appellate Court from acting in accordance with the requirements of law and justice.

" By the practice of the civil law and of the Courts which follow that practice," observes Mr. Chancellor SANFORD, in *Vanderheyden* v. *Reid*, Hopk., 412, " a cause removed to a superior tribunal, by an appeal, is reheard at large, upon the facts as well as the law. It is treated as if it had been commenced in the Superior Court; the parties may introduce new proofs ; and any proceedings may take place, which law and justice may require for the investigation of the truth." These principles apply to courts of probate equally as to other courts. Indeed, they apply universally, except where by statute some change in the law has been made.

The Legislature may impose restrictions upon the party appellant only, or on both parties. By R. S., c. 63, § 20, the party aggrieved is to file the reasons of his appeal. The judicial construction given to this section has limited the appellant to the reasons assigned by him for his appeal. But this limitation is by statute. But no such limitation is imposed upon the appellee. His rights are unaffected. As to him, so far as relates to the subject matter of the appeal, the judgment of the Court appealed from is vacated and a new judgment must be rendered, and this judgment

Gilman *v.* Gilman.

must be based upon the proofs before the Court by which it is rendered. The appellant is limited by the statute to the reasons he chooses to assign. The rights of the appellee remain unaffected, for no statute has touched or impaired them. Undoubtedly both parties may appeal in a case like the present, as was done in *Hughes* v. *Decker*, 38 Maine, 153. But, in the case last cited, the question now discussed could not be raised, because of the appeal by both parties. It has, therefore, no bearing on the question now under discussion.

These views are in entire accordance with the weight of judicial authority upon the subject. In *Boynton* v. *Dyer*, 18 Pick., 1, MORTON, J., in discussing probate appeals, says, " the case is to be tried anew here, and each party may adduce new evidence and rely upon new grounds to support the claim or defence. But in the mode of trial there is a manifest difference between an appeal from a common law court and from the Court of Probate. * * In the latter the appellants are restricted to such points as are specified in their reasons of appeal." In *Bean* v. *Burleigh*, 4 N. H., 550, it was decided that in an appeal from a decree of the Judge of Probate, the appellant is restricted to such matters as are specified in the reasons of appeal.

" The Court of appellate jurisdiction," as is remarked in *Washburn* v. *Washburn*, 10 Pick., 375, " is to revise the case upon the evidence produced, unirfluenced by the decision of the Court below." In Massachusetts, an appeal from the Judge of Probate allowing an executor's private account against the estate, under R. S., c. 66, § 19, without submitting the claim to arbitration, opens the whole account, and the appellate Court has authority, if neither party requests a jury, to decide on the claim and to decree that a balance is due from the executor to the estate, although the executor claims a balance due from the estate to him. *Willey* v. *Thompson*, 9 Met., 329. " When, therefore," remarks SHAW, C. J., in the case last cited, " an appeal is taken and entered in this Court, the whole case is brought before this Court

by the appeal. * * The authority of the appellate Court is to revise the whole decree and pass such decree as the Court below might and should have rendered."

"But, can the appellee" inquires EASTMAN, J., in *Twitchell* v. *Smith*, 35 N. H., 49, "who has claimed no appeal, have the decree opened so far as he is concerned? In *Wendell* v. *French*, 19 N. H., 205, it was held that he could, and that on appeal taken he might show error in the decree, and have it corrected. And, in that case, charges of the appellee, which had been disallowed by the Probate Court, were allowed by the superior Court, and the decree made to conform to such allowances. We are not inclined to disturb the rule there laid down. We do not discover that it can work hardship to any one, but, on the contrary, it may save expense to all parties. It may also act as a salutary check to hasty appeals. If the rule is understood to be that an appeal opens the case on the part of the appellant, to the extent to which he may assign causes of appeal, and also that the appellee may show error in the decree, the appellee will have notice of the claim of the appellant, while the appeal itself will be notice to the appellant that the appellee may contest the decree." Upon an appeal from a decree of the Judge of Probate allowing a guardian's account, the only matters open to inquiry by the appellant, are those specified in his reasons for appeal. But the appellee is not thus confined, but may, on such appeal, show error in any part of the decree and have it corrected. *Patrick* v. *Cowles*, 45 N. H., 553.

The conclusion to which we have arrived is that, upon a reasonable construction of the statute, under the provisions of which this appeal is before us, and in accordance with the weight of judicial authority, we have, upon this appeal, the right to affirm the decree of the Judge of Probate, or to increase or diminish the allowance decreed by him, as we shall adjudge law and justice to require.

The determination of this question becomes important, as the appellee claims an increased allowance under this ap-

peal.   There is an appeal taken by her, now pending in the Court below, in which the cause assigned is, that her allowance is too small.   The necessity, therefore, arose of determining whether the amount of allowance was to be determined in two hearings, or whether it was fully before us on this appeal.

The Judge of Probate, upon the petition of the appellee, decreed her an allowance of seventy-five thousand dollars from the personal estate of Nathaniel Gilman, deceased, from which an appeal was duly taken and entered by the appellant.   With this decree the appellee also is dissatisfied. Proofs have been offered and arguments furnished on each side as to what sum would be a proper allowance to the appellee under the circumstances of the present case.

By the common law, as it stood, according to GLANVILLE, in the reign of Henry 2d, a man's goods were to be divided into three equal parts, one of which went to his wife, one to his children, and one was at his own disposal.   The share of the wife and children were called their reasonable parts, and the writ *de rationabili parte bonorum* was given for their recovery.   By the statute of descents, R. S., 1857, c. 75, § 9, if the husband die intestate, " the widow takes one third, if no issue, one half, if no kindred, the whole" of the personal estate of her deceased husband.   This share, therefore, in the absence of a will, is to be regarded as the proportion of the personal estate of the husband, to which, in the judgment of the Legislature, the wife is justly entitled.   A similar liberality of legislation is to be found in most of the States.

When the estate is insolvent, or " no provision is made for the widow in the will of her husband, or she duly waives the same, the widow shall be entitled to so much of the personal estate, besides her ornaments and wearing apparel, as the Judge deems necessary, *according to the degree and estate* of her husband and the state of the family under her care."   R. S., 1857, c. 65, § 13.   The allowance may be more or less than in case the husband had died intestate and

solvent. Each case will depend on its own peculiar facts. No general rule can be established, for what, in one case might be an allowance amply sufficient, in another might be clearly inadequate. The amount in each case must be left to the judicial discretion of the Judge of Probate, regard being had to what will be necessary according to the degree and estate of the husband.

The amount of one third is not to be regarded as a statutory provision in cases like the present. But while not imperative as an enactment, it is eminently suggestive as indicating the general purpose and views of the Legislature on this subject. While this may not be deemed binding on the Court, but rather as guiding its action, it leaves to the Judge a discretion to be exercised under all the circumstances which may increase or diminish the allowance.

All the attendant and accompanying circumstances are to be considered, — the ages of the husband and wife, — the length of their cohabitation, — whether a first or second marriage, — the number of children of each and of both, — that is, by former marriages or by their joint union, — the wealth of the husband, — the estate of the wife in her own right, — any anti-nuptial agreements, — their performance or non-performance, — the treatment of each to the other, — the health, place of residence and necessary expenditures of the wife, — the family under her charge and whatever other circumstances may address themselves to a sound judicial discretion, and may enable the Court to approximate as nearly as possible to exact justice to all whose interests may be involved in its judgment. The elements upon which the decision must rest, some tending to increase, some tending to diminish the allowance, will vary, as between case and case, according to the changing condition of parties. No rule can be established in advance as to the relative weight of any particular fact, for it cannot be foreknown how far it may be modified by the other facts with which it is indissolubly connected.

In the case before us, the husband was possessed of from

five to six hundred thousand dollars, mostly in personal property. The real estate, of which he died seized was of trifling value. The dower of the appellee is but nominal. The provision made for her by the will was so disproportionally inadequate, reference being had to the testator's great estate, as to indicate anything rather than affectionate or kindly relations on the part of the husband toward his wife. The appellee had well founded reasons for dissatisfaction and for an appeal to the law in vindication of her rights.

The appellee was married in 1836. The marriage was a second one on the part of her husband, who was twenty-six years older than his wife, and was the father of six children by a previous marriage. By the second marriage, there were four children living at the time of the husband's decease, two of whom were minors. Most of the children of the first marriage had the aid of the large capital and the rare talent and sagacity of their father, — were at different times in partnership with him, — and had amassed estates rivaling or exceeding his own in magnitude. The children by the second marriage have lost the benefit of their father's counsel, and of the assistance which his wealth might afford, and of the advice which his great business talent would have enabled him to render.

Before their intermarriage, the husband agreed in anticipation of their intended union to make a settlement of thirty thousand dollars upon his future wife. The marriage was consummated, — but the agreement was never performed. This is no slight indication of what the testator then deemed as reasonable and necessary, regard being had to his degree and estate. Since that time his estate has greatly increased. To this sum and its increase the wife was equitably entitled, for marriage is a good consideration, and an agreement to make an allowance is one which a court of equity will enforce. In 1841, the husband received and retained two thousand dollars to which the appellee was entitled from the estate of her father. These sums, thus withheld, and which the appellee should have received, have gone into the estate

of the husband and become a part of its assets. They amount, with interest to the present time, to over ninety thousand dollars.

The appellee was an accomplished lady, who, at the time of her marriage, was a member of the family of the first Chief Magistrate of this State, and had ever been conversant with good society. An allowance proportionate to the ample means of her husband can properly be made, without infringing upon the rights of others. The degree and estate of her husband render this necessary and reasonable. A just respect to his memory requires it. Her health is poor. If the requirements of her health compel her to resort to a more genial climate, the large estate of her husband authorizes an allowance such as would afford her this indulgence. The ecclesiastical courts, in suits for divorce, when the health of the wife requires it, may allow such sum for alimony, while the suit is pending, as will enable the wife to proceed to a more genial climate to seek its restoration, and the courts of chancery in this country do the same. *Lynde* v. *Lynde*, 4 Sand. Ch., 373. On appeal, the decree of the Vice Chancellor was affirmed by the Chancellor. 2 Barb. Ch., 72. The expenses of living are greatly increased. The burden of taxation bears more heavily. The health of the wife may require her to visit a warmer clime. The statute directs us to have reference to the degree and estate of the husband. Taking into consideration all the facts to which we have alluded, it seems to us that an allowance of eighty-five thousand dollars would be but reasonable and necessary according to the degree and estate of her husband, and the state of the family under her charge.

And it is accordingly ordered and decreed, that, instead of the sum allowed by the Judge of Probate, there shall be allowed to the said widow, Joanna B. Gilman, the sum of eighty-five thousand dollars out of the personal estate of said deceased, to be paid by the executors of his will; and she may select any portion thereof from the said estate at the appraisement thereof in the inventory, from any articles

not specifically bequeathed, and the executors of said will are ordered to deliver the same to her and take her receipt therefor, and thereupon charge the same in their account of administration upon said estate.

And it is further ordered, that the said appellee recover against the appellant, George F. Gilman, her taxable costs upon this appeal.

KENT, DICKERSON, BARROWS and TAPLEY, JJ., concurred. WALTON and DANFORTH, JJ., concurred in the result.

CUTTING, J.—It appears that, at a Court of Probate, held at Augusta, within and for the county of Kennebec, on the fourth Monday of May, 1864, there was allowed to this appellee, widow of the late Nathaniel Gilman, out of the personal estate of her deceased husband, the sum of seventy-five thousand dollars. From that decree an appeal has been taken to this Court, by one of the heirs to the estate, because, as he alleges,—"the allowance granted by said decree is excessive, unreasonable, and not necessary according to the degree and estate of her husband and the state of the family under her care." Other reasons were assigned, which, as the case is now presented, become immaterial.

At the hearing, a question arose, whether this Court, if so disposed, upon the foregoing facts, could increase the widow's allowance, she appearing as the appellee, and not as the *aggrieved party;* which question is now presented and involves the construction of our statute upon that subject.

Section 19 of c. 63 provides that:—"The Supreme Judicial Court is the Supreme Court of Probate, and has appellate jurisdiction of all matters determinable by the several Judges of Probate; and any person aggrieved by any order, sentence, decree, or denial of such Judges, may appeal therefrom to the Supreme Court."

By section 20 :—"That, within ten days, after claiming his appeal, he shall file in the probate office his bond, and also the reasons of appeal, with the register of the Court appealed from, and serve all other parties, who appeared

before the Judge of Probate in the case, with a copy of such reasons."

By section 23 : — " That, after an appeal is claimed, all other proceedings, *in pursuance of the matter appealed from,* shall cease, until the determination of the Supreme Court *thereon."*

By section 24 : — " That said Court may reverse or affirm, in whole or in part, *the sentence, or act appealed from,* pass such decree *thereon* as the Judge of Probate ought to have passed, remit the case to the Probate Court for further proceedings, or take any order *therein* that law and justice require."

I have thus referred to, and condensed the several sections giving this Court jurisdiction in cases of appeal from the Probate Courts ; from which it must be understood, that none but the *aggrieved* party has admittance here as the actor, while the party not aggrieved can *only* appear to repel and defend against the grievances *alleged.*

Such grievances present and form the only issues to be tried by the Court, or, under their direction, by the jury. It is "the sentence or act of the Probate Court *appealed from,*" which this " Court may reverse or affirm, in whole or in part." But such reversal or affirmation would be ineffectual without a decree ; therefore the statute provides that this Court, in such an event, "may pass such decree *thereon* as the Judge of Probate ought to have passed." If reversed in part, the decree would be for the balance ; if in whole, that the appellee should receive no allowance. Such decrees by the appellate Court are only authorized by statute. The word " *thereon*" has reference to the sentence or act appealed from, as likewise our authority to " take any order *therein,* that law and justice require." All those terms have reference to the allegations of the aggrieved party, which alone confer jurisdiction.

But it has been contended that, if we find the appellant not to have been aggrieved, we can still entertain a sort of fictitious jurisdiction, so as to inquire and ascertain, judicially,

whether the non-aggrieved party may not have been wronged by the probate decree. What injustice has she suffered? None appears of record. It is true her counsel now contend, *arguendo*, that her allowance was too small. If aggrieved, she should have filed her reasons, and her statute bond, and given due notice, such as were required of the appellant, that evidence might have been produced by the one party to prove and by the other to disprove the allegations. But the only issue now presented to us by the pleadings is whether the appellee has been allowed too much, not whether she has been allowed too little; and it has been presumed that the evidence was taken with reference to that issue. Such has been the practical, as well as the judicial construction of the statute. In *Hughes, Appellant,* v. *Decker,* and *Decker, Appellant,* v. *Hughes,* 38 Maine, 153, where eminent counsel were employed, we have the practical illustration. There both parties appealed, and, by their respective reasons filed, put in issue the allowance; the one party was aggrieved because it was insufficient and the other because it was more than sufficient. The reasons, although numerous, tended to raise an issue as to the amount of the allowance, except one, which, it was contended, put in issue the jurisdiction of the Probate Judge; upon which the Court remark, that "the appellants are not prohibited from showing such want of jurisdiction, provided it comes legitimately within any one of the reasons of their appeal filed in the probate office, *to which by law they are strictly confined.*" And further, "we are not satisfied that either of the reasons assigned puts in issue the jurisdiction."

So, too, in the case of *Moody, Appellant,* v. *Hutchinson,* 44 Maine, 67, it appears that the widow appealed from a decree of the Judge of Probate, allowing her out of the personal estate of her deceased husband the sum of ten hundred and twenty-four dollars and sixty-three cents, and the principal reason by her filed was the insufficiency of that sum. In their opinion, the Court remark, — "it is true that, on an appeal from the Probate Court, the whole pro-

ceedings are again examinable in the appellate Court, *so far as they are opened by any of the causes assigned*, and new, as well as the former, testimony may be introduced touching *those issues*, which are in this case; *first*, as to the *sufficiency* or *insufficiency* of the allowance."

If·this Court had decided that the sum was sufficient, the widow would not have sustained her appeal; but no one ever contended that the appellee, without becoming an appellant, with appropriate reasons filed, could in the appellate Court reduce the allowance decreed· by the Probate Judge. That case and the one at bar are similar, only the parties are reversed.

In Massachusetts, whose statute is like our own, the Court have given it the, same construction. *Boynton* v. *Dyer*, 18 Pick., 1, where the Court say : — "But in the mode of .trial there is a manifest difference between an appeal from a common law court and from the Court of Probate. In the ·former, the whole case is to be tried over again, as if it had never been tried. In the latter, the appellants are restricted.to such points as are specified in their reasons of appeal. These are the only subjects, which the adverse party has been notified to be prepared to investigate. *Every thing else*, not having been objected to, is impliedly assented to, and presumed to be correct."

So, in the present case, the sum allowed was not objected to by the appellee, but, on the contrary, from aught that appears, with that she was satisfied, or, in other words, she was not the aggrieved party ; and now, shall we add to the contentment of the one unsolicited, and to the grief .of the other amid his prayers and tears ? Such an act would be as unscriptural as it would be illegal.

In *Willey* v. *Thompson*, 9 Met., 329, the claim, filed in the Probate Court and allowed, was for *the balance of account;* and the Court held that, from the character of the charge, they could examine into and ascertain what the balance really was, and upon which side of the leger, when correctly posted and balanced, that balance would appear,

and they found a sum in favor of the appellant, the aggrieved party. In such case, "all the items on both sides are put in issue," and are manifestly embraced within the reasons of the appeal. Other remarks in the opinion had reference to such a state of facts; for the Court introduce the subject by saying that, "where the claim is on a single specific demand they are not required to give an opinion." I can discover nothing in that or any other decision from which an inference can be drawn that the Court would give a happy and contented widow what she never lawfully claimed; if otherwise, such almoners have no jurisdiction beyond the limits of their own State.

Again, in New Hampshire, the same rule of law prevails. In *Bean* v. *Burleigh*, 4 N. H., 550, RICHARDSON, C. J., remarks, — "It seems to us, from the very nature of the case, that the hearing must be confined to the grievances alleged."

It cannot be pretended that the principle thus announced has ever been overruled by subsequent decisions. Errors have been corrected in debits and credits, but not otherwise. The idea recently advanced that the appellant is strictly confined to his reasons of appeal, that is, to the issue by him presented, and that the appellee may open the whole case, *otherwise than to rebut such reasons*, has, in my apprehension, no foundation in the statute or in the rules of pleading. If one party is confined to the issue, so is the other, otherwise there is no issue, without which there can be no trial.

The opinion of the Chief Justice assumes what the record does not disclose. He apprehends from facts, *aliunde*, that both parties have been aggrieved, and as such came up here specifying their grievances, as in the case of *Hughes* v. *Decker*, and *Decker* v. *Hughes*. Had such been the record, some of his conclusions might be justly inferable. That he travelled out of the record, I infer from the question, which he put; viz. : — "Why not, then, while confining the appellant to the reasons of his appeal and limiting the decision on his side by those reasons, regard the case as open on the part of the appellee, and thus upon one hearing finally de-

termine the rights of all parties? *Why require two hearings when one will suffice?*"

What evidence has this Court that there are to be two hearings, on one day the aggrieved party, and on the next the party not aggrieved, the one strictly confined to his reasons and the other unlimited, with no reasons filed, no bond and no notice given to his adversary? Whereas, had each party appealed, their respective reasons would have formed only one issue and demanded but one hearing.

From the evidence before us touching the issue, we are all satisfied that the *appellant* has not been aggrieved; consequently the decree of the Judge of Probate should be affirmed; and, inasmuch as we are authorized by statute to "take any order *therein,* that law and justice require," and seeing that the enforcement of the decree has been delayed by the act of the appellant, law and justice require that the appellee should recover interest on the sum allowed from the time of its allowance until final judgment shall be rendered *therein* by this Court, with costs.