Donna LOVEJOY

v.

Richard H. GRANT and Maine School Administrative District No. 37.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1980.

Decided Aug. 24, 1981.

Law Offices of David J. Fletcher, Jane M. Eaton (orally), Calais, for plaintiff.

Verrill & Dana, A. M. Horton (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN * and ROBERTS, JJ.

ROBERTS, Justice.

Donna Lovejoy appeals from a judgment of the Superior Court, Washington County, dismissing her complaints against the defendants,[1] in which she alleged breach of an employment contract and deprivation of her right to procedural due process. We vacate the judgment below and remand for further proceedings.

Donna Lovejoy began working for Maine School Administrative District No. 37 in May 1977 as an "in-school tutor." She was initially paid from federal funds received by Washington County under Title VI of the Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801–992.[2]  The

---

\* GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

1. Lovejoy originally filed a complaint against Maine School Administrative District No. 37 (comprising the towns of Addison, Columbia Falls, Cherryfield, Harrington, Milbridge, and Narraguagus). She subsequently filed a substantially identical complaint against Richard Grant, the Superintendent of M.S.A.D. No. 37. The Superior Court granted the parties' joint motion for consolidation of the two complaints, pursuant to M.R.Civ.P. 42.

2. The CETA statute was extensively revised in 1978. 92 Stat. 1912. Unless we note otherwise, the statutes and regulations cited in this opinion are those which were in effect in 1977 when the events at issue in this case occurred.

The general purpose of CETA is "to provide job training and employment opportunities for economically disadvantaged, unemployed, and underemployed persons" through a "flexible and decentralized system of Federal, State, and local programs." 29 U.S.C. § 801. The statutory scheme enables state and local governmental units to receive grants from the Secretary of Labor and to allocate the funds in order to alleviate unemployment in their local areas.

funds were allocated to M.S.A.D. No. 37 through a "public service employment contract" between the Washington County Commissioners and M.S.A.D. No. 37. The contract described a project designed to provide extra help for pupils who were performing below their grade level by hiring tutors to give general assistance to the classroom teacher. The contract specified that three tutors would be involved on the project and committed funds to cover the period from April 4, 1977, to June 15, 1978, excluding the 1977 summer vacation.

When the CETA funding was suspended for the summer vacation, arrangements were made for Lovejoy to continue working and to be paid from M.S.A.D. No. 37 funds. In August 1977, Lovejoy was informed that her employment with M.S.A.D. No. 37 was terminated and that she would not be permitted to resume the CETA-funded position in September. She was, however, paid until September.

On September 1, 1977, Lovejoy filed a complaint for "unjust termination" with the Office of Manpower Planning and Coordination, the state agency responsible for administering the CETA program. The agency responded that her complaint was "out of our jurisdiction" because Lovejoy "was not working as a CETA participant at the time of termination." Although Lovejoy was advised of her right to request a hearing and appeal this decision through CETA administrative procedures, she did not appeal.

Two years later, in September 1979, Lovejoy initiated these actions in Superior Court. She filed complaints against M.S.A.D. No. 37 and against Richard Grant, the Superintendent of M.S.A.D. No. 37 alleging two counts against each.[3] Count I, for breach of employment contract, alleged that her termination was wrongful, without reasonable cause, and without the procedural safeguards and certificate of dismissal to which she was entitled under state law. Count II, for deprivation of constitutional rights under 42 U.S.C. § 1983, alleged that she had been deprived of a property right without due process of law.

The defendants moved for dismissal of the complaints, on various grounds and, in the alternative, for summary judgment. The Superior Court dismissed Count I on the grounds that Lovejoy had failed to exhaust administrative remedies.[4] The Superior Court dismissed Count II on the grounds that Lovejoy did not have a property right in her employment and therefore had failed to state a claim upon which relief could be granted.[5]

I

The Superior Court found that Lovejoy's complaint was based on a "dispute between herself as a participant in a CETA program and the defendants as subgrantees" and that the resolution of such a grievance was governed by procedures established under federal regulations. The pertinent regulation, 20 CFR § 98.26(a), reads:

Each prime sponsor or eligible applicant shall establish a procedure for resolving any issue arising between it (including any subgrantee or subcontractor of the

Title VI of CETA deals with "emergency job programs" designed to provide "transitional employment for unemployed and underemployed persons in jobs providing needed public services...." 29 U.S.C. § 962(a).

3. Lovejoy's brief says that Count I against Grant was dismissed by agreement of the parties. Although this agreement is indicated in memoranda presented to the trial court, there was no formal dismissal in the trial court and no docket entry.

4. Although characterized as a dismissal, we treat the disposition of Count 1 as a summary judgment.

5. Lovejoy had also filed a motion, pursuant to M.R.Civ.P. 15, for leave to amend Count II of her complaint against Grant, because she had inadvertently failed to allege that she was deprived of a property interest. Count II of her complaint against M.S.A.D. No. 37 does allege deprivation of property, using the same language contained in her proposed amendment. Although the Superior Court did not rule on Lovejoy's motion for leave to amend, it apparently treated the complaints as if both alleged deprivation of a property right.

prime sponsor) and a participant *under any Title of the Act.* Such procedures shall include an opportunity for an informal hearing, and a prompt determination of any issue which has not been resolved. When the *prime sponsor* or eligible applicant takes an adverse action against a participant, such procedures shall also include a written notice setting forth the grounds for the adverse action and give the participant an opportunity to respond.[6]

(Emphasis added.) In addition to the local grievance procedures required by section 98.26(a), the regulations provide procedures within the Department of Labor for "receipt, investigation, hearing, and determination of questions of noncompliance with the requirements of the Act and the regulations promulgated under the authority of the Act." 29 CFR § 98.40(a). The regulations also provide that a participant must exhaust the local administrative remedies before initiating the federal-level hearing procedures. 29 CFR §§ 98.26(d), 98.40(c). With an exception not relevant to this case, the regulations preclude judicial review of there proceedings, stating that "all action initiated under this Act and regulations issued thereunder shall be final upon a determination by the Secretary." 29 CFR § 98.-49.

The Superior Court concluded that Lovejoy had no judicial remedy because she had failed to exhaust these administrative remedies available through the CETA program. On appeal, Lovejoy argues that she was not subject to the CETA regulations because she was terminated from a summer job that was not funded by CETA. Since Lovejoy has conceded, however, that she was paid until September, it seems clear that her complaint is based on her inability to resume the CETA position for which she claims to have had a one-year contract. In the alternative, Lovejoy suggests that even if her termination was subject to the CETA procedures, the school district was also required to observe the statutory provisions

for dismissal of teachers, set forth in 20 M.R.S.A. § 473(4). That section provides:

Superintending school committees and school directors shall perform the following duties:

... After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain. Such dismissal shall not deprive the teacher of compensation for previous services.

Lovejoy argues that this section was violated and that her remedy for violation of state law does not depend on exhaustion of administrative remedies available under the CETA program.

■ We need not decide what procedures would be required if Lovejoy were seeking a remedy for violation of the CETA act or regulations. We conclude only that Lovejoy's failure to exhaust the administrative remedies available under the CETA program was not a proper basis for dismissing her claim under section 473(4). The CETA grievance procedures are designed to deal with alleged violations of the CETA act and regulations. They are qualitatively different from the duties required of school directors under section 473(4). Section 473(4) gives a teacher not only the procedural right to "investigation, due notice of hearing, and a hearing thereon," but also the substantive right to be dismissed only if she is determined to be "unfit to teach" or "unprofitable to the school." The investigation, hearing, and determination that the dismissal is for a reason specified in the statute must be performed by the local school directors. Administrative procedures available through the Department of Labor for the purpose of ensuring that recipients of federal CETA funds are observing feder-

6. According to the definitions provided in 29 CFR § 94.4, it appears that the State of Maine was the "prime sponsor or eligible applicant," M.S.A.D. No. 37 was the "subgrantee," and Lovejoy was a "participant."

al law, do not provide a substitute for administrative procedures established under state law. *See Winship v. Brewer School Committee,* Me., 390 A.2d 1089 (1978); *Fernald v. City of Ellsworth Superintending School Committee,* Me., 342 A.2d 704 (1975); *Wright v. Superintending School Committee, City of Portland,* Me., 331 A.2d 640 (1957). If Lovejoy was entitled to the notice, hearing and the certificate of dismissal provided by section 473(4), no purpose would be served by requiring her to first exhaust the completely unrelated CETA administrative remedies.

We are unable to conclude, as a matter of law, that Lovejoy's job title and the source of her funding automatically deny her the protections accorded to "any teacher" under the state law. The description of the project in which she was a participant provides that tutors must be certified teachers because their work will be "closely parallel to a classroom teacher" and that "for all major purposes hired tutors would be professionals and in that vein would be treated as other professional staff personnel employed by the school district." We also see nothing in the CETA statute or regulations, as they existed when the events in this case occurred,[7] to suggest that requirements of local or state law are pre-empted

or otherwise not applicable to CETA participants. In fact, the statutes and regulations emphasize that programs are to be locally controlled and that CETA participants are to be treated the same as other employees of the employer.[8]

The question of whether the school district was compelled to comply with section 473(4) before terminating Lovejoy's employment involves factual determinations that were not reached by the Superior Court. Whether or not she was a "teacher" within the meaning of the state law, whether or not she actually had a contract with the school district, and the terms of her contract, if any, are unresolved questions of fact. We therefore vacate the summary judgment on Count I.

## II

In dismissing Count II, the Superior Court concluded that Lovejoy had not stated a claim under 42 U.S.C. § 1983 for deprivation of constitutional rights.[9] Lovejoy argued that the termination of her employment without notice or a hearing deprived her of property without due process of law. The United States Supreme Court has stated that a public employee's interest in pub-

---

7. The 1978 amendments to CETA make it clear that CETA administrative remedies do not preclude other civil remedies. 29 U.S.C. § 816 establishes new grievance procedures and sanctions for violations of the act. Section 816(*l*) provides:

    The existence of remedies under this section shall not preclude any person who alleged that an action of a prime sponsor or of any other recipient violates any of the provisions of the [Act] or the regulations promulgated under the [Act], from instituting a civil action or pursuing other remedies authorized under Federal, State, or local law.

8. Participants in programs funded under Title VI of the CETA are not federal employees. 29 CFR §§ 98.28, 99.82. The regulations applicable to Title VI programs require that CETA participants receive the same benefits, working conditions, and promotional opportunities as "other employees similarly employed," 29 CFR § 98.-24, and require that employers "shall insure that applicable personnel procedures and collective bargaining agreements have been met." 29 CFR § 99.77(b).

9. 42 U.S.C. § 1983 reads:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

    Lovejoy has not alleged that the defendants violated her federal statutory rights. Therefore we do not address the issue of whether her complaint states a claim under the broader interpretation of section 1983 enunciated by the United States Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Nor do we express any opinion as to whether such a claim would be subject to dismissal for failure to exhaust the administrative remedies discussed in Part I of this opinion.

lic employment is a "property" interest for due process purposes if he has a "legitimate claim of entitlement" to continued employment unless "sufficient cause" is shown for discharging him. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The employee must have "more than an abstract need or desire" for continued employment and "more than a unilateral expectation of it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Such property interests are not created by the Constitution, but are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

■ Under appropriate circumstances an employee who receives her salary from CETA funds may have a property right arising from an independent source, such as state law. See footnote 8, *supra. Cf. De-Tore v. Local # 245,* 615 F.2d 980, 984 (3d Cir. 1980) (not deciding the issue of whether provision in collective bargaining agreement could create protected property interest for CETA employee). A property interest in public employment can be created by a statute or ordinance that restricts the grounds on which an employee may be discharged. Maine law does provide that certain public school teachers may be discharged only for cause. Under 20 M.R.S.A. § 161(5) tenured teachers are entitled to certain procedural and substantive protections concerning non-renewal of their contracts. 20 M.R.S.A. § 473(4), quoted above, restricts the grounds on which "any teacher" may be discharged in the course of a contract. The Superior Court recognized these statutes, but concluded that they gave no protection to untenured teachers. We disagree.

■ It is clear that a nontenured teacher is not protected by section 161(5) and has no "legitimate claim of entitlement" to renew-

al of her contract. *See Mack v. Cape Elizabeth School Board,* 553 F.2d 720 (1st Cir. 1977). Even if Lovejoy had a contract, therefore, she was not deprived of any property right if her termination came at the end of that contract. Section 473(4) protection, however, applies to "any teacher" while employed under a contract. Lovejoy alleges that there was an implied contract between herself and the school district for the one-year period covered by the CETA funding.

■ The availability of CETA funding for a specified period of time may have given rise to an expectation that Lovejoy would continue to work. If this was merely a unilateral expectation it would not give rise to a protected property interest. Lovejoy is alleging, however, that there was an independent contract, equivalent to that made with regular teachers, that brings her within the protection of section 473(4). The lack of tenure or a formal contract does not foreclose the possibility of a public employee's right to procedural due process if the employee can prove that his interest in continued employment was secured by "rules or mutually explicit understandings" that justify his legitimate claim of entitlement. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Here, Lovejoy has alleged that section 473(4), in conjunction with an implied contract between herself and the school district gives rise to a legitimate claim of entitlement to continued employment for the term of the contract. She must be given an opportunity to prove her claim in light of "the policies and practices" of her employer. *Id.*

We conclude, therefore, that the dismissal of Lovejoy's complaints on the grounds relied upon by the Superior Court, was erroneous. We also note that the defendants' motion to dismiss raised several other issues, including a claim that Count I was barred by the Statute of Frauds, and Count II by the statute of limitations. The Superior Court did not rule on these issues, they were not raised on appeal, and we express no opinion thereon. We hold only that, if

her allegations are assumed to be true, the plaintiff's complaint states a claim under 20 M.R.S.A. § 473(4) and under 42 U.S.C. § 1983 and that her action is not barred by her failure to exhaust CETA remedies.[10]

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

10. We have noted that the section 1983 claim in Count II alleges a due process violation resulting from the plaintiff's entitlement under 20 M.R.S.A. § 473(4), and does not allege a violation of the CETA statute or regulations. See note 9, *supra*.