Robert T. BARBER

v.

INHABITANTS OF TOWN OF FAIR-
FIELD and H. Dale Green.

Supreme Judicial Court of Maine.

Argued March 10, 1983.

Decided May 10, 1983.

Law Offices Burton G. Shiro, Louis J. Shiro (orally), Waterville, for plaintiff.

Preti, Flaherty & Beliveau, John P. Doyle, Jr. (orally), Portland, Peter J. Beckerman, Waterville, for defendant.

Before GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

CARTER, Justice.

The plaintiff, Robert Barber, was dismissed as Police Chief of the Town of Fairfield. Pursuant to Rule 80B, M.R.Civ.P., he filed an appeal to the Superior Court, Somerset County. After an evidentiary hearing, the court sustained the appeal. The defendants, the town, *et al.*, appeal the judgment of the Superior Court. The plaintiff cross-appeals from the entry of judgment in the amount of $768.38, representing back pay from the date of dismissal to the date of the termination of the plaintiff's one-year employment contract. For reasons other than those relied upon by the Superior Court, we affirm the judgment which the town has appealed. As for Barber's appeal, we affirm the judgment in part and remand for further proceedings consistent with this opinion.

I. *Procedural and Factual Background*

Since 1976, the plaintiff, Robert Barber, had been appointed Chief of Police of the Town of Fairfield pursuant to one-year employment contracts. On February 8, 1978, Dale Green, the Town Manager of Fairfield, sent a letter to the plaintiff which indicated that because Green had lost confidence in the plaintiff's ability to operate the department, Barber would not be reappointed police chief for the ensuing year. The letter further provided that the plaintiff had "the right to request a review of my [Green's] action by the Town Council." The plaintiff thereafter requested a hearing before the Town Council of Fairfield. On February 14, 1978, Green notified Barber that he was suspended with pay pending the hearing before the town council. At the March 1, 1978 hearing, the town council was asked to

determine whether Green had "sufficient reason not to reappoint Barber." In a 2–2 vote, the council refused to support Green's decision. On March 22, 1978, Barber was reappointed for another year until March 31, 1979.

On March 6, 1979, Green asked the plaintiff to resign but the plaintiff refused to do so. Green subsequently handed the plaintiff a six-page letter dated March 5, 1979 and signed by Green informing the plaintiff that he was "removed from and dismissed" as the police chief "effective immediately." The letter cited sixteen reasons for his decision. The letter further read that "if you [the plaintiff] wish to appeal my [Green's] decision to remove you from your position . . . which decision is effective immediately, . . . you have the right and the opportunity to a fair hearing before the Fairfield Town Council which will meet in a Special Town Council Meeting . . . on Tuesday March 13, 1979." Finally, the letter informed the plaintiff that he would be paid from March 6 to March 13, the hearing date.

The plaintiff subsequently retained counsel, Jed Davis, Esq. By letter dated March 8, 1979, Davis informed the chairperson of the town council that because the plaintiff was dismissed without notice and a hearing, rendering the dismissal improper, the March 13 hearing on his appeal to the town council was "entirely out of order." The town attorney for Fairfield contacted Davis by a letter dated March 9, 1979. The letter read that the plaintiff had been merely "suspended with pay not dismissed" pending a final determination after a fair hearing. Mr. Davis was scheduled to be away on vacation during the March 13 hearing. The plaintiff, therefore, obtained other counsel to represent him at the hearing.

On March 13, the plaintiff appeared before four members of the town council. One member, David Dulac, was not present; Mr. Dulac testified at trial that he was not in favor of the dismissal. He further stated

that he had told Green that he would be away on vacation on March 13. Plaintiff's counsel informed the town council and Green that the plaintiff was not ready to proceed with the hearing. Plaintiff's counsel cited the following reasons: (1) plaintiff had been dismissed without a prior hearing in violation of 30 M.R.S.A. §§ 2317(1)(N) and 2361 (1978), (2) David Dulac, a town council member who was expected to testify for the plaintiff, was away on vacation, and (3) Mr. Davis, plaintiff's counsel, was away on vacation.[1] After some discussion, the plaintiff and his counsel left the hearing. No evidence was ever presented.

In a letter dated March 14, 1979, Green informed the plaintiff that by "walking out" of the hearing the plaintiff waived all due process rights to a fair hearing. Green further notified the plaintiff that 30 M.R.S.A. § 2317(1)(N) granted him, Green, as town manager, the "exclusive authority" to remove the plaintiff as police chief without any opportunity for any appeal to the town council. Green thereafter dismissed the plaintiff.

Shortly after the hearing, Mr. Davis was informed by the plaintiff that he would no longer be representing the plaintiff. For the remainder of the proceedings, Barber was represented by the law office that appeared for him at the aborted hearing.

On May 1, 1979, the Town of Fairfield appointed David DiTomaso as chief of police. He accepted the position despite the uncertainty of his status created by this pending lawsuit.

Pursuant to Rule 80B, M.R.Civ.P., the plaintiff filed in Superior Court, Somerset County, a complaint, later amended, alleging that he was dismissed as the Police Chief of the Town of Fairfield without a pretermination hearing in violation of 30 M.R.S.A. §§ 2317(1)(N) and 2361(1) and of the due process clause of both the Maine and United States Constitutions, and that because his attorney and one of his witness-

---

1. One other reason cited by the plaintiff was that Dorothy Poulin, the appointed moderator of the hearing, was not impartial because she was personally involved in some of the allegations made in Green's letter notifying the plaintiff of his dismissal.

es were away on vacation, the hearing should have been postponed until April 1, 1979.[2] The plaintiff requested reinstatement and full back pay from the time of his dismissal to his reinstatement.[3]

After a jury-waived trial, the court entered a judgment on behalf of the plaintiff. The justice ruled that the March 5 letter acted as an "unequivocal dismissal," not a suspension with pay, which violated 30 M.R.S.A. § 2317(1)(N) and due process because no pretermination hearing was held.[4] The justice further determined that neither the statute nor the town charter indicated that a police chief hired on a yearly contract is entitled to a hearing if his appointment is not renewed. The justice ruled, therefore, that because the term of his appointment had expired on March 31, 1979, the plaintiff was not entitled to reinstatement and that the plaintiff was only entitled to back pay from March 13 to March 31, $768.38. Finally, the justice ruled that Rule 80B does not provide the court with the authority to order attorney fees.

## II. *The Town's Appeal*

■ The town first contends that the plaintiff did not have a property interest in his employment which would have given rise to due process protection. The requirement of procedural due process applies to deprivations of liberty or property interests. U.S. Const., amend. 14; Me. Const., art. I § 6–A. In this case, the plaintiff claims a property interest and does not assert any liberty interest. "A property interest in public employment can be created by a statute or ordinance that restricts the grounds upon which an employee may be discharged." *Lovejoy v. Grant,* 434 A.2d 45, 50 (Me.1981); *see Beitzell v. Jeffrey,* 643

F.2d 870, 874 (1st Cir.1981); *State ex rel. Sweikert v. Briare,* 94 Nev. 752, 755, 588 P.2d 542, 544 (1979); *see also Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972) (state law may create property interest in public employment).

■ Title 30 M.R.S.A. § 2317(1)(E) (1978) authorizes the town manager to appoint the chief of police. Title 30 M.R.S.A. § 2317(1)(N) (1978) provides:

1. Duties. The town manager shall:

N. Have exclusive authority to remove for cause after notice and hearing all persons whom he is authorized to appoint and report all removals to the board of selectmen.

Section 2317(1)(N), therefore, enables the town manager to remove the police chief for cause after a hearing. In addition, 30 M.R.S.A. § 2361(1) (1978) reads, in part:

Police officers may be removed for cause after notice and hearing.[5]

By providing that the plaintiff can be removed for cause after notice and hearing, both sections 2317(1)(N) and 2361 specifically limit the defendants' power to discharge the plaintiff. These statutes, therefore, create a property interest in the plaintiff's employment as the Police Chief of the Town of Fairfield.

■ The town also contends that even assuming a property interest exists, the justice erred in determining that the March 5 letter to the plaintiff acted as an unequivocal dismissal without the benefit of a prior hearing in violation of 30 M.R.S.A. § 2317(1)(N) and of the due process clauses of both the State and Federal Constitutions. By enacting sections 2317(1)(N) and 2361, the Legislature intended to ensure that mu-

2. As the plaintiff had done at the hearing, in his complaint he raised the issue regarding Dorothy Poulin's impartiality.

3. The plaintiff also requested a declaratory judgment that any future hearing be conducted by an impartial person.

4. The justice also ruled that the hearing would have been accusatory in nature in violation of due process and that by appearing specially on

March 13, the plaintiff did not waive his due process rights.

5. Section 2361 was recently clarified by an amendment which provides that "[p]olice officers, including chiefs of police, may be removed for cause after notice and hearing." P.L.1979, ch. 104 (effective September 14, 1979).

nicipalities discharge police chiefs only after compliance with due process rights, notice, a hearing, and removal for cause. *See* L.D. 231, Statement of Fact (109th Legis.1979). These statutes do not attempt to prevent a municipality from suspending a police chief prior to a hearing. When an officer is charged with misconduct, suspension pending a hearing is "fair and often necessary" for the protection of the public against delinquent officials. *Griffin v. Denton,* 61 Ariz. 454, 458, 150 P.2d 96, 98 (1944); *Russo v. Walsh,* 31 N.J.Super. 558, 561, 107 A.2d 528, 531 (1954), *aff'd,* 18 N.J. 205, 113 A.2d 516 (1955).

The March 5 letter from Green, the town manager, did provide that the plaintiff was dismissed effective immediately. The letter, however, further provided that the plaintiff was entitled to a hearing and that the plaintiff would receive full compensation until the hearing. By giving the plaintiff full salary pending a hearing to determine whether Green had just cause for removing the plaintiff, the defendants' actions amounted to a suspension with pay. Moreover, in a March 9 letter, the town attorney informed the plaintiff that he had been "suspended with pay not dismissed." The March 9 letter acted to correct the language used in the March 5 letter. Finally, on this record, there is no evidence that the plaintiff was prejudiced by the town manager's use of the word dismissal rather than suspension in the March 5 letter. Under the circumstances of this case, the plaintiff was not, by the use of the improper word, denied his statutory rights under sections 2317(1)(N) and 2361 or his due process rights under the Maine and United States Constitutions.

In his complaint, the plaintiff also alleged that the meeting should have been postponed until both his witness and his attorney returned home from their respective vacations. A proceeding to remove a police chief is quasi-judicial in nature thereby requiring adherence to certain formalities and safeguards which are not unique to, but which are characteristic of, the judi-cial process. *Cf. Sevigny v. City of Biddeford,* 344 A.2d 34, 36 n. 4 (Me.1975) (action to remove plaintiff from office of assessor). Included among these procedures is the right to introduce evidence and present witnesses. That right is required by the due process clause. *See Jenkins v. McKeithen,* 395 U.S. 411, 429, 89 S.Ct. 1843, 1852–53, 23 L.Ed.2d 404, 421 (1969); *Baltimore & Ohio Railroad Co. v. United States,* 298 U.S. 349, 368–69, 56 S.Ct. 797, 807–08, 80 L.Ed. 1209, 1224 (1936). At the hearing, the plaintiff told the town council that because one of its members, David Dulac, was away on vacation, he could not testify for the plaintiff as he had intended to do. At trial, Dulac testified that he was not in favor of the plaintiff's dismissal. Moreover, Dulac stated that he had told Green that he would be away on the scheduled March 13 hearing date. Nevertheless, Green proceeded to schedule the hearing on March 13. Under the circumstances of this case, Dulac was a critical witness. He apparently was the only town council member prepared to testify on behalf of the plaintiff. To have scheduled the hearing on a date on which the defendants knew that one of the plaintiff's key witnesses could not be in attendance operated to rob the plaintiff of his right to present evidence. The failure to postpone the proceedings on the basis that the plaintiff's lawyer was on vacation did not amount to a deprivation of due process because the plaintiff did have counsel at the hearing. The defendants could have conducted the hearing with the available witnesses and upon Dulac's return, his testimony could have been heard. By not postponing the hearing or at least postponing the final decision until Dulac had been heard, the defendants violated the plaintiff's right to due process. The plaintiff, therefore, was never legally dismissed. Because he was suspended on March 6, he retains that suspended status.

### III. *Barber's Appeal*

The plaintiff argues that the justice erred by failing to grant reinstatement

and by failing to award back pay from the hearing date to the reinstatement date. Violation of due process rights does not entitle the plaintiff to reinstatement. *See Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580–81 (1972) (proof of property interest would not entitle one to reinstatement, only to hearing); *see Zimmerer v. Spencer,* 485 F.2d 176, 178–79 (5th Cir.1973) (school teacher denied due process not entitled to reinstatement); *see also Wellner v. Minnesota State Junior College Board,* 487 F.2d 153, 156 n. 2 (8th Cir.1973) (school teacher denied due process entitled to salary but not to reappointment unless Board decided to reinstate). Normally, denial of due process rights would entitle the plaintiff to a hearing to determine whether cause exists for dismissing the plaintiff. *Perry,* 408 U.S. at 603, 92 S.Ct. at 2700, 33 L.Ed.2d at 581; *Wellner,* 487 F.2d at 156. In this case, however, the plaintiff had a one-year employment contract. In addition, title 30 M.R.S.A. § 2256 (1978) states that unless otherwise provided, the term of all municipal officials shall be one year. *See* 30 M.R.S.A. § 2250(2) (1978) (municipal official defined as appointed or elected member of municipal corporation). The plaintiff was appointed to serve a term from March 22, 1978 to March 31, 1979. The plaintiff was suspended on March 6 and received his full wages until March 13. We have found that the plaintiff maintained his suspended status for the remainder of his term, sixteen days. Under the circumstances of this case, by awarding compensation for the remainder of the term of employment, sixteen days, as the Superior Court did, the plaintiff is made whole without the need for a remand of this case for a hearing at which the issue would be whether just cause existed for his dismissal. *See Wardwell v. Inhabitants of Castine,* 154 Me. 123, 127, 144 A.2d 530, 532 (1958) (because defendant had not legally removed plaintiff, plaintiff entitled to salary for duration of employment contract); *cf. Mahoney v. City of Biddeford,* 130 Me. 295, 296, 155 A. 560, 561 (1931) (under ordinance providing that plaintiff has position until successor is elect-

ed and qualified, plaintiff who was not legally removed entitled to office and salary); *Andrews v. City of Portland,* 79 Me. 484, 10 A. 458 (1887) (mayor with life-time appointment who was not legally removed entitled to back pay from date of removal to reinstatement). The plaintiff, therefore, is not entitled to a hearing on that issue.

Despite the termination of his one-year appointment, the plaintiff claims that he had a justifiable expectation of being reappointed as police chief. The issue posed is whether that expectation required the town to comply with due process by providing him with notice, a hearing, and removal for cause on the issue of the denial of his reappointment.

▉ The plaintiff is entitled to such due process protection only if he can show that by not renewing his contract, the town deprived him of a property interest in reappointment. *Perry,* 408 U.S. at 599, 92 S.Ct. at 2698, 33 L.Ed.2d at 578; *Roth,* 408 U.S. at 576–78, 92 S.Ct. at 2708–10, 33 L.Ed.2d at 560–61; *see City of Kenosha v. Bruno,* 412 U.S. 507, 515, 93 S.Ct. 2222, 2227, 37 L.Ed.2d 109, 117 (1973). As we stated earlier, the statutory restriction of the grounds upon which an employee may be removed may create a property interest in public employment requiring due process protection. *Lovejoy,* 434 A.2d at 50. A property interest may also be created if there are "rules and mutually explicit understandings" to support a claim of entitlement. *Lovejoy,* 434 A.2d at 50 (quoting *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580). Although a "written contract with an explicit tenure provision" would support such a claim, the absence of such a provision is not determinative. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580. The plaintiff's written contract may be supplemented by an agreement implied from the employer's "policy and practices." *Lovejoy,* 434 A.2d at 50; *see also Perry,* 408 U.S. at 602, 92 S.Ct. at 33 L.Ed.2d at 580 (words and conduct under surrounding circumstances). A property interest created by an implied contract may

be decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976). To claim a property interest, there must be an "objective" expectation of reappointment not a mere subjective expectancy. *Zimmerer,* 485 F.2d at 177; *see Perry,* 408 U.S. at 603, 92 S.Ct. at 2700, 33 L.Ed.2d at 580 (not mere subjective "expectancy"); *Lovejoy,* 434 A.2d at 50 ("more than a unilateral expectation of it") (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561).

■■■ The trial justice determined that neither the statute, 30 M.R.S.A. § 2317(1)(N), nor the town charter indicated that a police chief hired on a yearly contract is entitled to due process protection if his appointment is not renewed. The justice, therefore, determined that section 2317(1)(N) did not create a property interest in reappointment.[6] The justice, however, never considered whether the "policy and practices" of the town officials created a property interest by providing Barber with an objective expectation of reappointment. On this record, there is evidence that in 1978 Barber was granted a hearing to review Green's decision not to reappoint him for another term. The hearing was conducted; the town council in a 2–2 vote decided to reappoint Barber. This evidence is sufficient to generate the issue of whether Barber had an objective expectation of reappointment.

We do not decide nor intimate any opinion on whether the trial justice properly determined that section 2317(1)(N) did not create a property interest in reappointment. We remand to the Superior Court for a factual hearing and a determination on the narrow issue of whether the "policy and practices" of the town manager and the town council provided Barber with a justifiable expectation of reappointment, thus constituting a protectable property interest.

6. The justice did not consider whether 30 M.R.S.A. § 2361 provided such a protectable property interest. Because the language of these statutes is so similar, that is, that an officer shall

Finally, the plaintiff claims that he is entitled to attorney fees. The plaintiff recognizes the general rule in the United States that in the absence of statutory authority or a contract the prevailing party may not recover attorney fees; the plaintiff then argues that the case falls within an exception to the general rule which permits the prevailing party to recover attorney fees when the losing party unjustly, unfairly, and in bad faith prolongs the litigation.

■■■ This issue is governed by the recent case of *Jackson v. Inhabitants of the Town of Searsport,* 456 A.2d 852 (Me.1983). We stated:

> In our state, as elsewhere in this country, the "American Rule" for attorney's fees is followed: each party pays the costs of his own lawyers. Here the rule is: "Except for some kinds of tortious conduct, the Maine state courts have no authority to include attorney's fees as part of costs in the absence of statutory authorization or agreement of the parties." *Thiboutot v. State,* 405 A.2d 230, 238 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555[1] (1980). *See also Vance v. Speakman,* 409 A.2d 1307, 1311 (Me.1979).

456 A.2d at 855–56 (footnote omitted). On the record of this case, there is no evidence of any tortious conduct warranting attorney fees.

The entry is

As to the town's appeal, we affirm the judgment of the Superior Court.

With regard to Barber's appeal, we affirm in part the judgment of the Superior Court and remand to the Superior Court to determine whether the plaintiff had a justifiable expectation of reappointment and for further proceedings consistent with this opinion.

All concurring.

be removed for just cause after notice and a hearing, we assume that he would have rendered a decision consistent with section 2317(1)(N).