Anne HAMMOND, et al. and Gary
Robertson, et al.

v.

TEMPORARY COMPENSATION
REVIEW BOARD, et al.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1984.

Decided March 27, 1984.

Ann R. Gosline (orally), Maine State Employees Ass'n, Augusta, for plaintiff.

Robert J. Stolt (orally), Deputy Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The issue in this case is whether the Temporary Compensation Review Board (the Board) improperly lowered the appellant-employees' position classifications which had been assigned to them under the Hay Plan, so-called, on the ground that the Board either exceeded its jurisdiction, or, if it acted within its powers, it did so in violation of the appellants' due process rights. Having carefully considered their arguments, we deny the employees' appeal and affirm the Superior Court judgment.

### 1. *Legislative history*

Expressly finding a dramatic need "for a redesigned classification and compensation plan" for state employees, the One Hundred and Seventh Legislature, by emergency legislation, authorized and directed the Department of Finance and Administration to conduct a review of the existing system and recommend needed statutory changes in relation thereto. P. & S.L.1975, ch. 100. The Hay Associates, a private group of qualified management consultants, were employed to undertake this review and, as a result of their study, proposed a plan of position classifications and employee compensation in the state employment system, known as the Hay Plan. The One Hundred and Seventh Legislature, in special session, approved this plan, and, again acting under emergency circumstances, implemented it into law with the incidental legislation necessary for its immediate efficient and effective operation. *See* P. & S.L.1975, ch. 147. The Hay Plan created a new classification scheme in relation to the many different positions of people in state employment. These classifications and the pay scales affixed to each job classification significantly altered Maine's system for compensating state employees.

### 2. *The appeals process*

Expressly finding that, in order to provide a fair and adequate classification and compensation plan for state employees, it was essential that a *classification appeals process* be initiated at the earliest possible

time (P. & S.L., 1975, ch. 147, preamble), the Legislature established the Temporary Compensation Review Board. *Id.* at pt. D, sec. 6. It gave the Board exclusive jurisdiction to hear appeals from employees or their designated representatives and from state appointed authorities concerning the allocation of classifications and unclassified employees to pay grades under the Plan. It made the decision of the Board on any appeal concerning the assignment of any position or classification to a salary range final and binding on the parties. Effective June 14, 1976, the Act provided that all appeals be submitted to the Board prior to July 15, 1976, and urged completion of the appeal process prior to November 1, 1976, as the compensation provisions under the Plan were made to become effective with the employees' first pay period in November, 1976. *Id.* at pt. D, sec. 13.

The legislation, however, provided no format or rules governing the appeals procedure, the Board being given only the following mandate:

> The board shall ensure that the current job specification or position description is correct and that the job has been properly evaluated by use of the Hay Guide Chart Job Profile Evaluation Method, together with job environment factors considered in relationship to all other jobs in State Government.

It necessarily follows that the Legislature left it to the Board's discretion to set up the rules it would follow in processing these appeals.

The legislation further empowered the Board, in order to reach a correct factual analysis of each appeal, to call on, and receive assistance from, the staff of the Personnel Department and the Office of State Employee Relations, through their director. It is evident that the primary purpose of providing an initial *classification appeals process* was to assure the accuracy of the job arrangements under the Hay Plan by inviting those most interested in these classifications, such as the workers themselves and the state authorities, to screen the same and, if found to be incorrect, to request a review by an independent board not connected with the Hay Associates. *See Kempton v. Zitnay,* 391 A.2d 341, 342 (Me.1978).

### 3. *Procedural Facts*

On June 22, 1976, the Board, through its staff coordinator, produced an interdepartmental memorandum detailing some of the procedures which the Board would put into effect in the proceedings to come. This memorandum was addressed "To all state employees," and was placed on state bulletin boards. This memorandum explained that the Board would only hear appeals involving an entire classification; in other words, whether or not all employees in a particular classification chose to appeal, any change in a classification after appeal would affect all employees in that classification. The memorandum further advised employees to

> be aware that a classification or individual unclassified position that is appealed will be re-evaluated, and the resulting pay grade assignment may be higher, the same, *or lower* than the original assignment. (emphasis added).

Posted with this memorandum was the form to be used by employees to file an appeal.

As provided by the Act and the Board's rules, an employee, the department authorities or both could appeal a particular job classification. An appeal could seek an upward adjustment, a downward adjustment or a general review of a particular classification. After receiving the appeals, the Board set up a schedule for hearing them and distributed notices of these hearing schedules. These notices identified the appeals as "upward" to indicate an employee appeal, or "downward" if the appeal was by the department. Labeling the appeals "upward and downward" meant cross-appeals. Department requests for general review on some appeals were expressly so indicated.

Of the 1069 classifications in the Hay Plan, 703 were involved in appeals to the

Board. By statute, the Board was directed to complete its "review of and provide decisions on all appeals prior to" November 1, 1976. P. & S.L.1975, ch. 147, pt. D, sec. 6. As a result of the Board's decisions on these appeals, 23% of the 703 classifications were unchanged, 65% were moved to a higher pay range and 12% to a lower pay range. Of the 82 classifications that were moved downward, 27 did not involve a downward appeal.[1]

Plaintiffs, representing employees in these 27 classifications, sought review in the Superior Court (Kennebec County) of the action of the Board. The Superior Court consolidated the cases and certified the consolidated case as a class action pursuant to M.R.Civ.P. 23. Plaintiff-employees argued before the Superior Court, as before this Court on appeal, that the Board acted in violation of law when it lowered the classifications of the 27 employee positions when no downward appeal had been filed. The Superior Court rejected the employees' arguments, and the employees appeal to this Court.

### 4. *Violation of Statutory Authority*

■ The employees' first argument on appeal is that the Board acted in excess of its statutory authority when it lowered employee classifications in the absence of a downward appeal. From the mere language of P. & S.L.1975, ch. 147, pt. D, sec. 6, to the effect that the Board shall *have exclusive jurisdiction* to hear appeals from employees, their designated representatives and from state appointed authorities concerning the allocation of classifications and unclassified employees to pay grades, the employees view the Board's authority on appeal as limited to a review of the classifications for purposes of upward or downward correction depending on whether the particular appeal is an "upward appeal" or "downward appeal;" in other words, so they claim, the Board may not correct an error in the classification, unless the corrective relief is favorable to the appellant. Thus, the plaintiffs contend that the Board was powerless to lower an employee classification, where there was no appellant or cross-appellant specifically advocating that result. We disagree.

We take notice that the appeal statute does not expressly cast any such restraint upon the Board, but rather, confers upon it in broad terms the power to correct *any* error in classification. Nothing in the legislative language indicates an intent on the part of the Legislature to tie down the Board's exercise of power depending on the nature of the appeal, *i.e.* whether the error comes to light in an upward or downward appeal. It is rather obvious that, confronted with the need for the redesigned classification and compensation system for state employees, as devised by the Hay Plan which it was enacting to become operative at the earliest possible time, the Legislature, anxious to secure for the Plan an added guaranty of accuracy, structured an appeals process to provide the mechanism whereby alleged wrongful classifications could be centered upon and reevaluated, and, if found incorrect, would be expunged and replaced by proper classifications. A statutory construction in line with the plaintiffs' contention would have prevented and prohibited the Board from bringing out the truth of the situation and from doing justice between the employer state and the employees, a result completely at odds with the very goal which the Legislature had in mind in setting up the reviewing process on appeal.

Furthermore, to analogize the operations of the Board to those of a court, as the plaintiff-employees would have us do, is to misconceive the purpose for which the Board was created. The objective of the 1975–1977 changes in the services and compensation system for state employees requires that the Board's mission be construed more broadly than that of an appellate court. Through the reorganization of the system, the Legislature sought "to pro-

---

1. For 24 of these 27 classifications, only an upward appeal was filed. The remaining three classifications involved both an upward appeal and a request for a general review.

vide equal pay for equal work." P. & S.L.1975, ch. 147, sec. 7 (statement of State Pay Policy). Interpreting the Board's authority to include downgrading (or upgrading) an employee classification even in the absence of a downward (or upward) appeal is consistent with this stated objective. The appeal section of the Act (P. & S.L. 1975, ch. 147, pt. D, sec. 6) gives broad authority to the Board to "ensure that the current job specification or position description is correct and that the job has been properly evaluated ... *considered in relationship to all other jobs in State Government.*" (emphasis added). *Id.* In order to achieve an equitable distribution of job positions to pay ranges, it was necessary for the Board to have considerable latitude in carrying out its review function. By its action the Board concluded that "equal pay for equal work" could be achieved only by lowering some classifications, notwithstanding the absence of a specific downward appeal. Viewing the Act as a piece of comprehensive legislation, from the specific mandate imposed upon the Board to ensure accuracy of position classification, we perceive a legislative intent, that any job classification appeal will subject that classification to complete reevaluation under the statutory guidelines.

There is nothing inherent in the nature of a legal review that precludes the reviewing body from requiring the party that invokes the body's authority to place something at risk as a price for securing review. *Cf. Gilman v. Gilman,* 53 Me. 184 (1865) (on *de novo* review of probate court, judgment against defendant-appellant may be increased); M.R.Civ.P. 56(c) (summary judgment may be entered against moving party). Given the Board's substantial and broad responsibilities to be carried out as expeditiously as possible within a very short span of time, it was entirely consistent with the express directives of the Act for the Board to lower pay classifications without regard to the absence of a downward appeal.

### 5. *Violation of Due Process*

 The employees next argue that, even if the Board had statutory authority to lower position classifications without a pending downward appeal, such action violated the employees' due process rights.[2] U.S. Const.Amend. XIV; Me. Const. Art. I, § 6–A. The right to due process of law does not insulate individuals against curtailment in any and all entitlements in which they may have an interest. Rather, the due process clauses protect only certain individual interests, such as any life or liberty interest or certain property interests. Here, the plaintiffs assert that they were deprived of a constitutionally protected property interest.

 When the individual's entitlement to a claimed right, privilege or relationship is grounded in state law, including, as in this case, one's right to continue in state employment under a particular job classification providing a certain level of compensation, recourse must be had to state law to get an initial determination as to whether what is involved is that type of interest which is protected "as property" by our constitutions. Property rights do not exist in a vacuum, and, in the case of a claimed enforceable expectancy of continued public employment, they must stem from justifiable employee expectations guaranteed to some degree by statute or state contract, or, in the least, arising from implicit state agency conduct or policy. *See Bishop v.*

**2.** Were the attack against the Board's decision mounted on grounds other than jurisdiction of the Board and due process violations in the implementation of the reference statute, the propriety of seeking review of the action of the Temporary Compensation Review Board under Rule 80B, M.R.Civ.P. might be questionable in view of the express provision of the statute that board decisions on any appeal concerning the assignment of any position or classification to a salary range shall be final and binding on the parties. P. & S.L.1975, pt. D, sec. 6. Claims of exercise of power beyond statutory authority and in violation of constitutional due process rights override such statutory sta ıp of finality of board action. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

*Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

■ The employee must show more than the mere "need or desire" for continued employment; rather, he must be able to point to existing law or rules, or mutual understandings, wherein his claims of entitlement are secured and may be supported. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ It is commonly accepted doctrine that there is no general property right to a job at a particular salary in public employment. *See Barber v. Inhabitants of Town of Fairfield,* 460 A.2d 1001 (Me.1983); *Lovejoy v. Grant,* 434 A.2d 45 (Me.1981); *Bowman v. Maine State Employees Appeals Board,* 408 A.2d 688 (Me.1979). If, at the end of a fiscal year, the Legislature chose to change the pay scales of state employment or eliminate certain positions, we have no doubt that these legislative choices would not be open to constitutional scrutiny in the manner the employees herein suggest. If, in setting the salaries for the next fiscal year, the Legislature chose to establish a Board to aid the process of gathering information on job classifications, no new constitutional right would thereby be created. Any employee's expectation of continued employment at a certain salary level will not be given constitutional protection merely on the grounds that the employee did not anticipate that a legislatively created Board would adjust that employee's job classification.

■ An act which merely classifies jobs in public employment and fixes salaries of state employees holding those jobs is not intended to create private contractual or vested rights to continued employment in those jobs at those salaries, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. *Dodge v. Board of Education,* 302 U.S. 74, 78–79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937).

When the statutory scheme grants tenure to public servants as in the educational field, or authorizes the execution of formal contracts detailing the terms of employment and the remuneration to be earned thereunder, or merely guarantees continued state employment by conditioning discharge on "sufficient cause" therefor, a "property interest" is created and a legitimate claim of entitlement to continued employment may then exist. *Lovejoy v. Grant,* 434 A.2d at 49–50. The employee may further justify a legitimate claim of entitlement to continued employment through a state agency's words, actions, rules, or "mutually explicit understandings." *Lovejoy v. Grant, Id.* at 50 (quoting from *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ The plaintiffs, however, have failed to prove that they had a constitutionally protected property interest in the job classifications they held or the salaries they were earning in their employment by the State prior to the enactment by the Legislature of the employees' salary plan, known as the Hay Plan, nor did they prove absolute entitlement to any particular job classification assigned to them under that plan. The statutory basis for a claimed property interest in salary levels must reflect all relevant statutory provisions. Where, as here, the statutory mechanism establishing pay scales includes a review process whereby initial classifications of employment positions may be adjusted by an independent board to foster the declared policy of the state to provide equal pay for equal work, any property interest that might arise from the new scheme would have to take into consideration that review process. *See Turnquist v. Elliott,* 706 F.2d 809 (7th Cir.1983) (employee has no property interest in being paid prevailing wage rate where agency has discretion whether to pay prevailing rate); *Pattern-makers League of North America v. Campbell,* 619 F.2d 826 (9th Cir.1980) (statutes and regulations, not constitution, govern continuation of special rate compensation). Property interests do not exist independent of the procedures enacted to estab-

lish and regulate those rights. *See Bishop v. Wood,* 426 U.S. at 345, 96 S.Ct. at 2077–78. Thus, the plaintiff-employees did not show that they had a constitutionally protected property interest in the initial particular classifications of the Hay Plan, because these on appeal were subject to reevaluation by the Board and adjustment under the law either upward or downward.

The plaintiff-employees further assert that the appeal procedure provided them by the Board under Public and Special Laws, 1975, ch. 147, pt. D, sec. 6 was constitutionally defective in that the particular notice of hearing of their "upward" appeal did not indicate that their assigned classification would be reevaluated *de novo,* *i.e.* for complete readjustment upward or downward, and that such omission rendered the notice insufficient for not being in compliance with the dictates of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), which demands that the notice be "of such nature as reasonably to convey the required information." The employees do concede, however, that the June 22, 1976, memorandum of the Board addressed to all state employees at the very beginning of the appeal period clearly indicated that "a classification .... that is appealed will be re-evaluated, and the resulting pay grade assignment may be higher, the same, or lower than the original assignment." In the circumstances of this case, we find that the plaintiffs have failed to prove that the notices provided by the Board in the implementation of the appeal process were legally insufficient, let alone constitutionally deficient.[3]

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.

---

**3.** Having failed to prove that they had a constitutionally protected property interest in the classifications assigned to their positions under the Hay Plan, the plaintiffs may not claim any deprivation of constitutional dimension in the procedure adopted by the Board in processing the appeals, since the requirements of procedural due process apply only to deprivations of liberty and property rights. *Board of Re ,ents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).