**Lawrence CHAPMAN**

v.

**CITY OF ROCKLAND.**

Supreme Judicial Court of Maine.

Argued March 4, 1987.
Decided April 13, 1987.

Arthur Strout, Carol Ann Lundquist (orally), Strout, Payson, Pellicani, Hokkanen, Strong & Levine, Rockland, for plaintiff.

Michael D. Seitzinger (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff Lawrence Chapman appeals from a decision of the Superior Court (Knox County) denying an appeal from his discharge as a dispatcher for the City of Rockland. Plaintiff contends that the decision to discharge him was not supported by substantial evidence, that he was denied a fair hearing because of the City Manager's bias and prejudice. We conclude that the discharge is supported by substantial evidence and find the remaining contentions to be without merit.

The facts may be summarized as follows: Plaintiff Lawrence Chapman, a dispatcher for the defendant City of Rockland, received a letter from the City Manager dated March 8, 1985, suspending him from his employment without pay and giving notice of a disciplinary hearing. The notice addressed three separate incidents of alleged employee misconduct. Following a hearing, at which plaintiff was represented by counsel, the City Manager found that the allegations against plaintiff had been proven and discharged him from his position as dispatcher. Plaintiff filed a complaint pursuant to M.R.Civ.P. 80B seeking review of the City Manager's decision. The Superior Court denied his appeal and plaintiff now appeals to this Court.

The first incident described at the hearing involved a call to the Rockland Department of Public Safety on February 11, 1985, by a mother requesting an ambulance for her pregnant daughter who had a temperature of 102.6 degrees. The mother told plaintiff, the dispatcher on duty, that she had already called the hospital and was told to bring her daughter right in. Plaintiff, believing that the call was a request for transportation, responded that the ambulance service was only for extreme emergencies and asked if she could find alternative transportation. Calling back about 15 minutes later, the mother reported she was unable to find a ride to the hospital and her daughter's temperature had risen to 103 degrees. Plaintiff dispatched an ambulance at that time.

The Chief Dispatcher, Linwood Lothrop, and Chief of the Ambulance Service, Lieutenant Wooster, testified that the ambulance should have been dispatched on the first call. Lieutenant Wooster also testi-

fied that the patient was one of the 100 most critical patients transported that year.

The second incident occurred on February 24, 1985. While on duty, plaintiff received a call from Gail Flaherty of the Knox Nursing Home requesting an ambulance to transport a patient to the hospital. Plaintiff informed her that an ambulance had just left Rockland for the hospital with another patient and asked if she could wait until it returned. When Mrs. Flaherty agreed to wait, plaintiff concluded that the call was not an emergency.

Assistant Chief Wooster overheard this conversation and dispatched a second ambulance, not then in use, to the Knox Nursing Home. Fire Chief Daye and Wooster testified that the proper procedure would have been for plaintiff to transfer the call to Fire Department personnel. Daye also testified that trained medical employees at the nursing home screen calls and as a result the nursing home only requests ambulances for emergency situations.

The final incident took place on February 25, 1985, when a woman came to the Rockland Police Department and reported that someone had attempted to rape her about 12 hours earlier. The police officer told her to contact the Rockland Police Department if she saw her assailant so that the police could obtain a better description. Later that day, at about 5:05 p.m., the woman called to report that she had just located the man who attempted to rape her the night before. Plaintiff was the dispatcher on duty at that time and he told her to call back the next day when the detective with whom she had originally spoken would be on duty. The testimony revealed that the plaintiff should have referred the call to the supervising officer and filled out a report that evening, rather than 16 days later.

 The City Manager's decision to dismiss the plaintiff will be upheld on appeal if there is substantial evidence on the record to support it. *In Re Maine Clean Fuels, Inc.,* 310 A.2d 736, 741 (Me.1973). The City Manager is authorized to remove "for cause" any employee that he is authorized to appoint. 30 M.R.S.A. § 2317(1)(N) (1978).[1] Dismissal "for cause" is appropriate when an employee's conduct affects his ability and fitness to perform his duties. *Durepos v. Town of Van Buren,* 516 A.2d 565, 566 (Me.1986). A dispatcher is the community's link with emergency services. Thus, it was important for the plaintiff to act responsibly and efficiently in performing his duties as dispatcher for the City of Rockland. The record supports the conclusion that plaintiff acted irresponsibly and in violation of recognized procedures in three critical situations. Cumulatively, these three incidents adequately support the plaintiff's dismissal "for cause."

Plaintiff's remaining argument that the City Manager prejudged his case and was biased against him is unsupported by any evidence in the record.

The entry must be:

Judgment affirmed.

All concurring.

---

1. 30 M.R.S.A. § 2317(1)(N) (1978) states:

§ 2317. Powers and duties of town manager
1. Duties. The town manager shall:

N. Have exclusive authority to remove for cause after notice and hearing all persons whom he is authorized to appoint and report all removals to the board of selectmen.