**Kathryn E. COOK**

v.

**LISBON SCHOOL COMMITTEE.**

Supreme Judicial Court of Maine.

Argued June 12, 1996.

Decided Aug. 12, 1996.

Bryan M. Dench (orally), Jonathan R. Doolittle, Ronald P. Lebel, Skelton, Taintor & Abbott, Auburn, for Plaintiff.

Bruce W. Smith (orally), Amy K. Tchao, Drummond, Woodsum & MacMahon, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN and LIPEZ, JJ.

RUDMAN, Justice.

Kathryn E. Cook appeals from a summary judgment entered in the Superior Court (Androscoggin County, *Saufley, J.*) in favor of the Lisbon School Committee on her complaint alleging violations of the Teacher Employment Statute, 20–A M.R.S.A. § 13201 (1993), her constitutional right to procedural due process, and the Freedom of Access Act, 1 M.R.S.A. §§ 405–410 (1989 & Supp.1995) arising from the School Committee's decision not to extend her contract as Director of Special Education. We affirm in part and vacate in part the summary judgment entered in favor of the defendants.

Beginning in August 1990, Kathryn Cook was employed by the School Committee as Director of Special Education pursuant to a series of personal one-year contracts, the last of which expired on June 30, 1995. These contracts incorporated the collective bargaining agreement between the School Committee and the Lisbon Association and Supervisory Association (LASEA). The contract provided in pertinent part that it would

> be automatically extended for one year at the end of each contract year unless the board notifies the LASEA member in writing on or before March 1st of each year of its intent not to extend the contract. The LASEA member shall be entitled to a written statement of the reasons for the non-extension.
>
> If, in the final year of the contract, the LASEA member is notified on or before March 1st of the school board's intention

to nonrenew, the administrator shall have the right to receive a written statement of the reasons for nonrenewal.

A LASEA member who has been employed for more than two years and who receives a notice of nonrenewal may request a hearing within 15 days of the receipt of notice to nonrenew.

From August 1990 until August 1994 Cook was reappointed annually to her post as Director of Special Education pursuant to the contract's renewal provision. As the 1994 school year got under way, however, the relationship between Cook and the Lisbon School Superintendent began to deteriorate. In September of 1994, the Superintendent sent a letter to Cook advising her that she was recommending Cook's dismissal for cause and placing Cook on administrative leave.

At the time the Superintendent sent this letter to Cook the School Committee conducted three executive sessions at which, Cook alleges, her dismissal was discussed in her absence. The Superintendent subsequently decided not to recommend Cook's dismissal but rather to recommend that Cook's contract not be renewed or extended after it expired on June 30, 1995.

On January 19, 1995, at a public meeting that Cook and her counsel attended, the School Committee followed the Superintendent's recommendation and voted not to renew or extend Cook's contract beyond its June 30, 1995, termination date. Approximately two weeks later, a letter signed by the Superintendent notified Cook in writing of the School Committee's nonrenewal decision and detailed twenty reasons that formed the basis of this decision.

On February 16, 1995, Cook submitted a written request to the School Committee for inspection of public records pursuant to 1 M.R.S.A. § 408 (1989) and requested a hearing on the nonrenewal of her employment contract before a "board of three arbitrators." The following day Cook filed a complaint seeking review of governmental action pursuant to Rule 80B alleging violations of

20–A M.R.S.A. § 13201 (1993), of 26 M.R.S.A. § 964 (1988),[1] and of her procedural due process rights. The School Committee scheduled a hearing but refused Cook's request that the hearing take place before a panel of arbitrators. Cook ultimately refused to participate in the hearing. Despite two additional requests, Cook received no response to her requests for inspection of public records until the School Committee supplied her the requested documents on May 8, 1995.

In March 1995 Cook amended her complaint to include three counts alleging violations of the Freedom of Access Act. Subsequently both parties moved for summary judgments. After a hearing on the cross-motions for a summary judgment, the court entered a judgment in favor of the School Committee and against Cook on all counts. This appeal followed.

■ In reviewing the grant of a motion for a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party and determine whether the trial court committed an error of law. *Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928 (Me.1996). "Rule 56 was intended to permit the *prompt disposition* of cases in which the dispute is solely dependent on an issue of law." *Tisei v. Town of Ogunquit,* 491 A.2d 564, 569 (Me.1985). A summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, establish that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law. M.R.Civ.P. 56(c).

## I

### *20–A M.R.S.A. § 13201 (1993)*

■ Cook contends that because she is certified by the state of Maine as a teacher, she is entitled to the employment protections accorded teachers by 20–A M.R.S.A. § 13201 (1993). We disagree.

---

1. Cook does not contest the summary judgment entered in favor of the Lisbon School Committee on Count III of her complaint, which alleged a violation of 26 M.R.S.A. § 964 (1988).

Section 13201, entitled "Nomination and election of teachers; teacher contracts," deals at length with the hiring, employment, and termination of "teachers." Section 13201 requires that a teacher's contract, after an initial probationary period, be for at least two years and that a teacher on a continuing contract must receive at least six months notice prior to the terminal date of her employment contract before nonrenewal. Despite its repeated use of the term "teacher," however, the statute does not define the term.

■■■ The meaning of statutory language is a question of law. *International Paper v. Town of Jay,* 665 A.2d 998, 1002 (Me.1995). In construing a statute we look first to the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then we need not look beyond the words themselves. *Pelletier v. Fort Kent Golf Club,* 662 A.2d 220, 223 (Me.1995). Thus, if the text of the statute given its plain meaning answers the interpretative question raised by the parties, the language must prevail and no further inquiry is required.

In this case, while we need not decide the exact parameters of the term "teacher," Cook's service as a Special Education Director is not within the plain meaning of section 13201's use of the term. The plain, common, and ordinary meaning of "teacher" does not encompass Cook's service as the Director of Special Education. The common meaning of teacher is "one who teaches or instructs, especially one whose occupation is to instruct." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2119 (1911). Cook's job description is couched almost entirely in terms of managerial and supervisory duties and requires her neither to be assigned to a classroom nor to instruct or have contact with students. There is no indication that the Legislature intended the statute to employ the broader definition of "teacher" advanced by Cook. Under these circumstances, the common and ordinary meaning of the challenged word must prevail. The trial court did not err in finding that the provisions of section 13201 do not apply to Cook.

## II

### *Denial of Procedural Due Process*

■■■ Cook has not demonstrated a protected property interest in her continued employment such that it was error for the court to grant a summary judgment in favor of the School Committee on her count alleging a violation of her procedural due process rights.

■■■ A property interest in continued employment may be established by contract or by proof of an objectively reasonable expectation of continued employment. *Mercier v. Town of Fairfield,* 628 A.2d 1053, 1055 (Me.1993) (citing *Hammond v. Temporary Compensation Review Bd.,* 473 A.2d 1267, 1271 (Me.1984)). If a person is hired for a government position which is clearly terminable at the will of her superiors, the employee does not have a property interest in the position. Thus, a public employee has no property interest sufficient to invoke the Fourteenth Amendment's due process guarantees unless the applicable statute or employment contract requires that employment may be terminated only on a showing of "cause." *Bishop v. Wood,* 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 167 n. 2, 94 S.Ct. 1633, 1650 n. 2, 40 L.Ed.2d 15 (1974); *Perkins v. Board of Directors, S.A.D. # 13,* 686 F.2d 49, 52 (1st Cir.1982).

While Cook's contract required "cause" for dismissal during the term of the contract, the portion of the contract discussing nonrenewal and nonextension contained no such provision. Thus, Cook has no cognizable claim to continued employment that is protected by the Due Process Clause of the Fourteenth Amendment. The court properly granted a summary judgment in favor of the School Committee on Cook's claim for a violation of her due process rights.

## III

### *The Freedom of Access Act*

### *1 M.R.S.A. § 407 (1989)*

■■■ Cook next challenges the School Committee's nonrenewal decision on the

ground that the letter sent to her by the School Committee did not constitute a statement of the reasons for her nonrenewal "on the record," as required by 1 M.R.S.A. § 407(2) (1989).

Section 402(2)(C) provides that proceedings before a School Committee are public proceedings, *see Marxsen v. Board of Directors, M.S.A.D. No. 5*, 591 A.2d 867, 870 (Me.1991), and the requirement of a record therefore is imposed by section 407(2):

> **Dismissal or refusal to renew contract.** Every agency shall make a written record of every decision involving the dismissal or the refusal to renew the contract of any public official, employee or appointee. The agency shall, except in case of probationary employees, *set forth in the record the reason or reasons for its decision* and make findings of fact, in writing, sufficient to appraise [sic] the individual concerned and any interested member of the public of the basis for the decision. A written record or a copy thereof shall be kept by the agency and made available to any interested member of the public who may wish to review it.

(emphasis added). The basic purpose of the Freedom of Access Act, as expressed in its introductory section, is to protect the public's right to obtain information about their government and governmental policies, to know what their government is doing, and to prevent the mischief of arbitrary and self-serving governmental action. 1 M.R.S.A. § 401 (1989). To accomplish these ends, we have stated that "[u]nder 1 M.R.S.A. § 407, agencies are required to make written findings of fact sufficient to apprise an applicant or any other member of the public the basis for its decision." *Edwards v. Town of York*, 597 A.2d 412, 413 (Me.1991). However, while "[t]his statute does not require the [agency] to include a complete factual record with its decision, it does require a statement of facts sufficient to show a rational basis for the decision." *Your Home, Inc. v. City of Portland*, 432 A.2d 1250, 1257 (Me.1981).

Cook's contract required that an administrator whose contract was not renewed receive "a written statement of the reasons for nonrenewal." Pursuant to this contract provision the School Committee, through the Superintendent, sent to Cook a letter that detailed twenty reasons for its decision not to renew her contract. While the Committee's reasons were not set forth in the manner in which a court would typically make findings, the reasons presented in the letter were sufficient to demonstrate that the School Committee had an adequate and rational basis for its decision and to inform Cook and members of the public of the basis for the School Committee's action. The court did not err in concluding that the School Committee had complied substantially with the statutory findings requirement of section 407(2) and properly granted a summary judgment in favor of the School Committee on Cook's claim for violation of section 407 of the Freedom of Access Act. *Cf. Cunningham v. Kittery Planning Bd.*, 400 A.2d 1070, 1079 (Me.1979) (affirming trial court decision when trial judge concluded that although form of agency's findings was unsatisfactory, findings in their entirety demonstrated that agency had substantially complied with statutory findings requirement).

## IV

### *1 M.R.S.A. § 405(6)(A)(2) (1989)*

■ Cook next argues that the court erred in granting a summary judgment in favor of the School Committee because a genuine issue of material fact exists with respect to whether the School Committee violated 1 M.R.S.A. § 405(6)(A)(2) (1989) by discussing in executive sessions the substance of the allegations levied against her without affording her the opportunity to be present.

Title 1 M.R.S.A. § 405(6)(A)(2) (1989) provides:

> Those bodies or agencies falling within this subchapter may hold executive sessions subject to the following conditions.
>
> •  •  •  •  •
>
> **6. Permitted deliberation.** Deliberations may be conducted in executive session on the following matters and no others:
>
> > **(A)** Discussion or consideration of the employment, appointment, assignment,

duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions:

.    .    .    .

(2) Any person charged or investigated shall be permitted to be present at an executive session if that person desires;

Cook alleges that the School Committee violated this provision by considering and discussing her employment, evaluation, and dismissal during executive sessions without providing her with the opportunity to attend these sessions. She argues that as a consequence of this violation she is entitled to the remedial measures set out in section 409(2). Section 409(2) provides:

**Actions.** If any body or agency approves any ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official action in an executive session, this action shall be illegal and the officials responsible shall be subject to the penalties hereinafter provided. Upon learning of any such action, any person may appeal to any Superior Court in the State. If a court, after a trial de novo, determines this action was taken illegally in an executive session, it shall enter an order providing for the action to be null and void.

In support of its motion for a summary judgment on this count, the School Committee submitted the affidavits of four of its five members, the Superintendent of Schools, and the School Committee's attorney. All of these affidavits stated that, although the School Committee had met in executive session to discuss Cook's dismissal, the discussions centered on the procedures for nonrenewal and dismissal of Cook and not the substance of the allegations against Cook. Cook countered with an affidavit of her own, stating that the remaining member of the School Committee had told her that she refused to sign an affidavit stating that the School Committee had not discussed in executive session substantive issues relating to

Cook's dismissal because "her recollection and notes revealed otherwise."

Cook seeks to have us vacate the court's grant of a summary judgment on this count based on the existence of a factual dispute with respect to what was discussed during the School Committee's executive sessions. The content of these discussions, however, although perhaps in dispute, is not material to the relief sought by Cook.

Section 409 provides in pertinent part:

If any body or agency *approves* any ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official action in an executive session, this action shall be illegal and the officials responsible shall be subject to the penalties hereinafter provided.

(emphasis added). Cook's complaint does not allege, nor do her affidavits establish, that her dismissal was *approved* in executive session. To the contrary, the allegations contained in her complaint and the uncontroverted statements contained in the affidavits of the members of the School Committee establish that the School Committee voted to refuse to extend or renew Cook's contract on January 19, 1995, at the public School Committee meeting attended by Cook and her counsel. Moreover, the supplemental affidavit submitted by Cook, even when read in a light most favorable to her, raises an issue of whether her termination was improperly *discussed* in executive session. Such discussions are not material to Cook's entitlement to the relief outlined in section 409, which by its terms is limited to the illegal *approval* of official actions in executive session. Cook has failed to generate a genuine issue of material fact with respect to whether the School Committee approved her termination in executive session in violation of sections 405 and 409. The court properly granted a summary judgment in favor of the School Committee on Cook's claim for violation of 1 M.R.S.A. § 405(6)(A)(2) (1989).

## V

### *1 M.R.S.A. § 408 (1989)*

■ Finally, Cook contends that because the School Committee repeatedly failed to

provide to her the records she requested pursuant to the Freedom of Access Act, the court erred in granting a summary judgment in favor of the School Committee on the count of her complaint alleging a violation of 1 M.R.S.A. § 408 (1989). We agree.

■ Title 1 M.R.S.A. § 408 states in part:

Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record. . . .

And section 409 provides in part:

If any body or agency or official, who has custody or control of any public record, shall refuse permission to so inspect or copy or abstract a public record, this denial shall be made by the body or agency or official in writing stating the reason for the denial, within 5 working days of the request for inspection by any person. Any person aggrieved by denial may appeal therefrom within 5 working days of the receipt of the written notice of denial, to any Superior Court within the State. If a court, after a trial de novo, determines that such denial was not for a just and proper cause, it shall enter an order for disclosure.

Interpreting these provisions, we have stated that because the act mandates a prompt response from the agency, "[a] governmental body *cannot* moot a claim of violation of the

Act by making disclosure long after the original request." *Campbell v. Town of Machias,* 661 A.2d 1133, 1135 (Me.1995) (emphasis added). Rather, the failure to respond in the time period established by section 409 "is deemed a denial of the request for the documents." *Id.*

In granting a summary judgment in favor of the School Committee, the court, although recognizing that the School Committee had an affirmative obligation to respond to Cook's request for records and that it had failed to meet this obligation, concluded that "no sanctionable violation of section 409 [had] been demonstrated." Contrary to the court's analysis, the School Committee's failure to respond to Cook's request for documents is a sanctionable violation of section 409, and the School Committee's eventual production of the requested documents does not alter this result.

■ The undisputed facts of this case establish the following. Cook first requested the public documents on February 16, 1995. Her request was identified as a request pursuant to the Freedom of Access Act. She received no response to this request or to a subsequent request, and on March 17, 1995, she amended her complaint to include an allegation that the School Committee had violated section 408. No copies of the requested records were provided to Cook until May 8, 1995.[2]

---

2. The present case is factually distinguishable from *Guy Gannett Publishing Co. v. Maine Dep't of Safety,* 555 A.2d 474, 475 (Me.1989). In *Gannett,* the defendants raised as an affirmative defense Gannett's failure to file its action within five days of the governmental agencies' denial. The School Committee, however, did not raise this defense.

More importantly, however, the 5–day limit in section 409(1) does not apply in this instance. Section 409(1) states in pertinent part:

Any person aggrieved by denial may appeal therefrom, *within 5 working days of receipt of the written notice of denial,* to any Superior Court within the State.

(emphasis added).

Hence, by its terms the provision applies only when a written notice of denial is received by the citizen who requested access. The statute, however, specifies no time limit when a de facto denial occurs as a result of a governmental agency's failure to fulfill its statutory duty. That is

exactly the situation we are now faced with: Cook received no written notice of denial. M.R.Civ.P. 80 B states in pertinent part:

The time within which review may be sought shall be as provided by statute, *except that if no time limit is specified by statute,* the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought . . .

(emphasis added).

In the absence of written response in this case, section 409(1)'s 5–day limitation is not implicated and, therefore, the appellant is permitted the 30–day period of time normally afforded to persons by Rule 80B when the controlling statutory provision is silent as to the time for filing an appeal. In the present case the governmental agency's failure to act occurred on February 21, 1995 and Cook filed her amended complaint on March 17, 1995. Hence, Cook's complaint was timely filed.

The School Committee's failure to respond to Cook's request for documents is deemed a denial of the request for documents and their subsequent production does not moot the alleged violation. *Campbell*, 661 A.2d at 1135. Pursuant to section 409, there would normally be a trial de novo to determine whether such denial was for a "just and proper cause." 1 M.R.S.A. § 409. The School Committee asserts that no violation of 1 M.R.S.A. § 408 occurred because it never actually refused to provide Cook with the requested records and because "Cook never made an attempt 'to inspect and copy'" the requested records. These arguments misapprehend the School Committee's duties pursuant to sections 408 and 409. Pursuant to section 409, Cook was entitled to a response to her request within 5 working days. It is undisputed that the School Committee did not comply with this mandate. The School Committee's silence is treated as a de facto denial, and the Freedom of Access Act places no affirmative duty on Cook, after properly requesting her records, to then make an "attempt to 'inspect and copy'" the records in order to assert her rights pursuant to the Act. Moreover, the School Committee makes no claim that the initially withheld records were confidential or otherwise protected from disclosure. As a matter of law, the School Committee's justifications for not promptly replying to Cook's Freedom of Access Act request do not constitute a "just and proper cause" for denying a citizen access to requested public records, and Cook is entitled to the entry of a summary judgment in her favor and an assessment of costs against the School Committee on this count.

The School Committee resists the entry of a summary judgment in favor of Cook on this ground by arguing that Cook is entitled to no further relief because she has obtained the records she sought and only the Attorney General or his representative can pursue the imposition of a civil penalty for a violation of the Freedom of Access Act. Although the School Committee is correct that only the Attorney General or his representative may enforce the Freedom of Access Act by seeking imposition of a fine pursuant to section 410, see 17–A M.R.S.A. § 4–B (Supp. 1995) ("All civil violations are . . . enforceable by the Attorney General . . . in a civil action to recover . . . a fine, penalty or other sanction. . . ."), the School Committee is wrong in its assertion that Cook, having been provided access to the documents, is entitled to no other relief. It would be contrary to the purposes of the Freedom of Access Act to permit a governmental body to avoid the payment of court costs for a violation of the Act merely by producing the improperly retained documents after the requesting party had undertaken the additional time and expense of filing an appeal of the denial in the Superior Court.[3] As the prevailing party on this count, she is entitled to costs. *See* 14 M.R.S.A. § 1501 (1980) ("In all actions, the party prevailing recovers costs unless otherwise specially provided."). We vacate the court's grant of a summary judgment in favor of the School Committee on Cook's claim for violation of section 408 of the Freedom of Access Act and remand for the entry of a summary judgment in favor of Cook.

The entry is:

Summary judgment in favor of the School Committee on Counts I, II, IV, and VI of Cook's complaint affirmed. Summary judgment in favor of School Committee on Count V of Cook's complaint vacated and

---

3. The School Committee repeatedly and erroneously asserts that Cook is not entitled to costs because "there is nothing the Freedom of Access law which authorizes the award of costs. . . ." This line of argument stands on its head the accepted practice in Maine. Pursuant to 14 M.R.S.A. § 1501 (1980) and M.R.Civ.P. 54(d), costs are allowed to the prevailing party unless otherwise specially precluded. Thus, contrary to the School Committee's argument, the Freedom of Access Act's silence on the issue of costs does not mean that costs may not be awarded to the

prevailing party. Rather, the Act's failure to specifically exclude the award of costs to the prevailing party indicates that a prevailing party may recover costs pursuant to Maine law and the rules of civil procedure. Moreover, the entry of a judgment for Cook on her section 408 claim does not reflect the creation of a new remedy for Cook, as the School Committee argues. Rather, that judgment protects the integrity of the remedy of disclosure provided by the Legislature for the failure of a public body to meet the section 408 obligation.

remanded for the entry of a judgment in favor of Cook on Count V.

All concurring.