STATE OF MAINE                                  SUPERIOR COURT
YORK, ss.                                       Civil Action
                                                Docket No.  AP-18-036


MARK O'BRIEN,                        )
                                     )
            Petitioner,              )
                                     )
      v.                             )        MEMORANDUM OF DECISION
                                     )        AND ORDER ON RULE 80B APPEAL
                                     )
TOWN OF OGUNQUIT,                    )
                                     )
            Respondent.              )

      Petitioner Mark O'Brien filed this Rule 80B action appealing his termination as

Fire Chief and as Director of the Emergency Management Agency (EMA) in the Town of

Ogunquit.  For the reasons set out below, the appeal is denied.

## I.  Facts

      Petitioner worked for the Ogunquit Fire Department from 1981 to 2012 in various

capacities, including firefighter, EMT, and Assistant Fire Chief.  (See R. Ex. A, at 3.)[1]  In

June of 2012, he was promoted to the position of Fire Chief.  The Fire Chief is appointed

by the Town Manager and confirmed by the Select Board.  The Select Board is the Town's

governing executive body.  The Town Manager, who is appointed by and responsible to

the Select Board, is the chief administrator who oversees daily operations of the Town.

(R. Exs. D1, at 5, 19; D6, at 2.)

      As Fire Chief and head of Ogunquit Fire and Rescue, O'Brien was responsible for

managing the department; supervising, training and disciplining department personnel;

keeping abreast of and implementing pertinent laws and regulations; reviewing, revising

and enforcing standard operating procedures; and reporting to the Town Manager for

_____
[1] He also served as interim Town Manager for a period of time in 2016-17.


1

the "orderly operation of the department." (R. Ex. E6.) Also, as part of his duties as Fire Chief, O'Brien served in a non-salaried, "collateral duty position" of EMA Director. (R. Exs. E6, E7.) The EMA Director is appointed by the Select Board but responsible to the Town Manager for day-to-day oversight. (R. Exs. D1, at 14; E7, at 1.)

The Ogunquit Town Charter does not specify terms of office for the Fire Chief and EMA Director positions. It has been customary, however, for the Town Manager to recommend, and the Select Board to confirm, appointment of the Fire Chief on an annual basis; similarly, the Select Board has routinely appointed an EMA Director each year for a one-year term. (R. Ex. F, at 6.) O'Brien was appointed annually to serve in both capacities beginning July 2012. The Select Board last confirmed the Town Manager's reappointment of O'Brien as Fire Chief on June 27, 2017 for a one-year term ending June 30, 2018 and last appointed O'Brien as EMA Director on August 1, 2017 for a term also ending June 30, 2018. (R. Exs. G, at 4; H, at 3.)[2]

After receiving complaints regarding O'Brien's behavior as Fire Chief, Town Manager Patricia Finnigan notified him by letter dated June 27, 2018 that she was commencing an investigation and placing him on paid administrative leave during the pendency of the investigation.[3] (R. Ex. D4.) The letter cited "safety concerns in [O'Brien's] execution of certain operations and personnel matters; concerns about the way [he] interact[s] and communicate[s] within the department; and complaints about

---

[2] As discussed below in Section II, state law establishes as the default an indefinite term for fire chiefs. 30-A M.R.S. § 3153(1) (2018) ("Unless otherwise provided by contract, charter or ordinance, fire chiefs shall be appointed for an indefinite term."). For EMA directors, Maine law does not specify a term of office; but there is a presumptive one-year term for municipal officers. *See* 37-B M.R.S. § 782 (2018); 30-A M.R.S. § 2601(2) (2018) ("Unless otherwise specified, the term of all municipal officials is one year.")

[3] The Town of Ogunquit Personnel Rules in Sections 8.4 and 8.5, respectively, provide that if the Town Manager is contemplating either suspension or discharge of an employee, the employee "may be immediately placed on administrative leave and notified in writing of the alleged offense and be given an opportunity to explain his or her circumstances (and have legal representation) at the convenience of the Town official(s) involved, upon reasonable notice." (R. Ex. D3, at 24.)

2

harassment." (R. Ex. D4.) The letter further instructed that O'Brien was "not to be at the Fire Department or other Town facilities" or to have "direct or indirect contact with any of the Fire Department staff or other Town employees;" to surrender his keys and other Town property in his possession; and to leave the Chief's vehicle at the station. (*Id.*)

Finnigan engaged Attorney Ann Freeman to conduct an independent investigation into complaints against O'Brien. (R. Ex. D6, at 1.) As part of her investigation, Attorney Freeman interviewed O'Brien as well as all full-time firefighters in the department. (R. Ex. D6, at 1.) Attorney Freeman's investigation resulted in a nineteen-page report summarizing her findings and conclusions (the Report). (R. Ex. D6.)

By letter dated August 22, 2018, the Town Manager provided O'Brien with a copy of the Report and invited him to attend a "pre-disciplinary hearing" at which he would have an opportunity to respond to the Report's findings and conclusions. (R. Ex. 5.) Although the Report did not substantiate the specific allegations that prompted the investigation, it set forth a number of findings about O'Brien's management practices and behaviors and concluded that O'Brien demonstrated "a lack of attention to detail related to the administrative aspects of the job and the importance of creating a professional work environment within the Department"; that he had "a tendency to manage the administrative aspects of the department, including employee relations, without any clear direction, organization and structure, but in a reactive manner"; and that, "even where there may be policies or guidance (written or otherwise), he [did] not seem to appreciate their significance or importance." (R. Ex. D6, at 19.). The Report concluded that "based on the totality of the findings of the investigation, it is

3

understandable that the firefighters have lost confidence in the Chief's ability to run the Department safely and effectively." (*Id.*)

O'Brien responded in writing to the Town Manager through counsel in an August 27, 2018 letter, which summarized his positions and stated that he "will be prepared to address all of the substantive concerns, allegations, or findings during his pre-disciplinary meeting on August 28th." (R. Ex. E1, at 3.)

On August 28, 2018, O'Brien and his counsel met with Town Manager Finnigan and Attorney Freeman to discuss the performance and management concerns raised by the Report.

By letter dated September 18, 2018, Finnigan notified O'Brien that she was relieving him of his "duties as Fire Chief effective September 18, 2018" and that pursuant to the Town Personnel Rules he had a right to appeal this decision to the Select Board within ten days from receipt of the letter. (R. Ex. D7, at 3.) The letter summarized the grounds for termination[4] based on the findings of the Report. Relying on these findings, Finnigan concluded that O'Brien demonstrated a lack of "leadership skills, essential management abilities, judgment, or temperament to lead Ogunquit Fire and Rescue." (R. Ex. D7, at 3.)

On September 27, 2018 O'Brien appealed the Town Manager's termination decision to the Select Board. (R. Ex. E2.)

At an October 2, 2018 meeting, the Select Board voted (4-0, with one member absent) to confirm a number of Town Manager appointments, including Interim Fire

---

[4] Grounds included: careless administration of the department, especially as relates to safety and well-being of firefighters; inability to manage the department competently, including failing to maintain current SOPs (standard operating procedures); unprofessional conduct, which created a toxic workplace environment; and lack of confidence on the part of firefighters in his leadership. Examples of each were provided in the letter. (R. Ex. D7.)

4

Chief. The Select Board also voted (3-1, with one member absent) to appoint a new EMA Director. (R. Ex. F, at 6-7.)

The Select Board convened a hearing on October 9, 2018 to consider O'Brien's appeal of the Town Manager's decision to terminate him as Fire Chief. Pursuant to Town Personnel Rule 8.11, the purpose and scope of the hearing was "to consider evidence and testimony from the Town Manager and the affected employee, who is entitled to have legal representation at his own expense if so desired and may request that the hearing be held in public." (R. Ex. D3, at 25-26.) The sole issue at the hearing was "whether or not to uphold the September 18, 2018, decision of the Town Manager to terminate the employment of the Fire Chief Mark O'Brien." (R. Ex. C.) The Select Board heard testimony from Finnigan and O'Brien, received into the record various documents, and entertained argument from counsel. (R. Exs. A-B.)

The Select Board affirmed the Town Manager's termination of O'Brien as Fire Chief in a written decision dated October 16, 2018, endorsing and adopting "the reasoning and conclusions of the Town Manager as set forth in her September 18, 2018 letter of termination and as supported by evidence in the Record." (R. Ex. A, at 1.) The Select Board declined to review O'Brien's claim that he had been improperly removed as Ogunquit's EMA Director because of its determination that the matter before it was an appeal of the Town Manager's decision to terminate him from the Fire Chief position; the Town Manager had not acted (and had no authority to act) with respect to the EMA Director position; and his notice of appeal failed to raise the issue. (*Id.*, at 1, n.1.)

O'Brien filed the present action seeking judicial review of the Town's actions on November 16, 2018.

5

## II. Discussion

### A. Standard of Review

The scope of judicial review in a Rule 80B appeal is limited. The court reviews the municipality's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the administrative record. *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176. With regard to judicial review of findings made, "substantial evidence" is considered to be any evidence that a reasonable mind would accept as sufficient to support a conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368. The court does not independently evaluate the evidence or substitute its judgment for that of the municipality. The question is simply whether there is any competent evidence in the record to support the Town Manager's findings, even if there is also inconsistent or contradictory evidence in the record as well. *Friends of Lincoln Lake v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128; *see also Sproul*, 2000 ME 30, ¶ 8, 746 A.2d 368 (finding that inconsistent evidence does not render other record evidence insubstantial). The party seeking to overturn the municipality's decision bears the burden of persuasion on appeal. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024.

### B. Fire Chief Position

O'Brien challenges the Town's decision to terminate him as Fire Chief on two grounds: (1) the Town's actions were arbitrary and capricious, and violated his rights to due process; and (2) the finding of "just cause" to terminate O'Brien's employment was not supported by substantial evidence.

#### 1. Due Process

By statute, "a fire chief shall be appointed in each municipality," and, "[u]nless otherwise provided by contract, charter or ordinance, fire chiefs shall be appointed for

6

an indefinite term."[5] 30-A M.R.S. § 3153, 3153(1) (2018). As a municipal officer, a fire chief is subject to removal only "for cause, after notice and hearing." 30-A M.R.S. § 2601(1) (2018).

In accordance therewith, Section 405.2 of the Ogunquit Town Charter authorizes the Town Manager to appoint department heads (including the Fire Chief), subject to confirmation by the Select Board. (R. Ex. D1, at 19.) Section 405.6 provides that the Town Manager shall have "exclusive authority to remove for cause, after notice and hearing, any person the Town Manager is authorized to appoint, and to report such removals to the Select Board, unless otherwise provided for by this Charter or Maine State law." (R. Exs. D1, at 19; D2.)

The Town does not dispute that O'Brien could only be terminated from the Fire Chief position for cause. And, O'Brien does not claim in this appeal that he was denied the basic elements of *procedural* due process, namely prior notice and an opportunity for hearing. Rather, his due process challenge focuses on whether his termination was accomplished by means that were pretextual, arbitrary and capricious, and without any rational basis. *See Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 32, 856 A.2d 1183. The record supports the conclusion that the Town afforded due process and did not act arbitrarily, capriciously, irrationally, pretextually, or contrary to its charter or personnel rules in terminating him from the Fire Chief position.

First, the process followed by the Town was consistent with its charter and rules and afforded Petitioner due process. The Town Manager acted within her authority in placing Petitioner on paid administrative leave and conducting an investigation. O'Brien was provided written notice of the initiation of the investigation into allegations of

---

[5] As discussed above, O'Brien had been appointed and confirmed as Fire Chief for a series of one-year terms beginning July 1, 2012. (*See also* R. Exs. B, at 1:47:30-54; G, at 4.)

misconduct. The notice advised that the Town was contemplating disciplinary action against him. An investigation was conducted. A report of that investigation was prepared and furnished to him. He had an opportunity to respond, both in writing and at a meeting with the Town Manager where he was represented by counsel. The Town Manager based her decision on the Report's findings and conclusions as well as O'Brien's responses thereto. O'Brien exercised his appeal rights. A hearing before the Select Board was held in accordance with Town of Ogunquit rules at which testimony and evidence from the Town Manager and Petitioner was taken, following which the Select Board issued its written decision affirming the Town Manager's decision.

Second, contrary to O'Brien's contention, he was not entitled to progressive discipline under Section 8 of the Town's Personnel Rules. Section 8.2 provides that "disciplinary action *may* normally be dispensed in the following manner, *although it need not be administered in this order:* (a) Written warning; (b) Probation; (c) Suspension without pay; (d) Discharge." (R. Ex. D3, at 24.) (Emphasis added.) Section 8.3 provides: "Disciplinary action shall be applied in a fair manner and shall be consistent with the infraction for which disciplinary action is being administered, taking into consideration an employee's past conduct;" and the sequence set forth in section 8.2 above "*need not be followed* if an infraction is sufficiently severe to merit immediate suspension or discharge, *as determined by the department head or Town Manager.*" (*Id.*) (Emphasis added.) Petitioner cites no authority to support any claim of statutory or constitutional entitlement to progressive discipline.

O'Brien contends that since the Report failed to substantiate the allegations which led to the reason for investigation in the first instance, additional concerns about his conduct raised by the Report do not constitute permissible grounds to terminate him. He advances no authority to support this proposition or to support the implicit

8

suggestion that there was any constitutional or other limitation on the scope of the investigation that was undertaken. If the investigation uncovered other grounds for terminating him that went beyond the initial reasons prompting the investigation in the first instance, the Town Manager was not required to disregard them. And, to the extent Petitioner argues this disciplinary process was motivated by bad faith, he has failed to make the requisite threshold showing to warrant the court's review of those allegations. *See Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990) ("A *'prima facie* showing of misconduct' is required before plaintiff is 'permitted to inquire into the mental processes of an administrative decisionmaker.' . . . In relying on vague, unsubstantiated allegations of bias and predisposition, plaintiff failed to make a sufficient showing to warrant an inquiry into the mental processes of the Board members and failed to demonstrate that the Board was predisposed against plaintiff.")

## 2. Substantial Evidence of Just Cause

Dismissal "for cause" is warranted when an employee's conduct "affects his ability and fitness to perform his duties." *Chapman v. City of Rockland*, 524 A.2d 46, 47 (Me. 1987). "Cause" is a "flexible concept that relates to an employee's qualifications and implicates the public interest." *Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995).

The Fire Chief in Ogunquit is the head of a department responsible for, among other things, organizing and managing the department in an orderly fashion; training, supervising, and, when necessary, disciplining department personnel; complying with and enforcing applicable state regulations and laws; and reviewing, revising, and enforcing standard operating procedures.

The Town Manager's decision is supported by sufficient cause. She relied on the Report's findings that O'Brien was careless in administering the department, especially

9

with respect to safety issues; failed to establish SOPs necessary for an effective department; created a toxic work environment; and had lost the confidence of department personnel. (R. Ex. 7.) She concluded that the Report's findings had cast doubt on Petitioner's ability to lead the department and perform the administrative responsibilities required for that position and that his inability to acknowledge and take responsibility for some of these matters militated against the imposition of progressive discipline.[6]

These findings and conclusions are supported by competent record evidence.[7] Even though some initial allegations prompting the investigation were not substantiated and O'Brien may have credibly rebutted others, it is not the court's role to re-evaluate the evidence anew or substitute its own judgment for that of the Town Manager. *See Ryan*, 582 A.2d at 975 ("The fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the [Town Manager's] findings from being sustained if there is substantial evidence to support them.") (quoting *Seven Islands Land Co. v. Maine Land Use Regulation Comm.*, 450 A.2d 475, 479 (Me. 1982)) If there is record evidence supporting the Town Manager's decision, as the court so concludes, then that is sufficient to sustain her decision.

---

[6] Dismissals of municipal employees for cause under similar circumstances have been affirmed. *See Moreau*, 661 A.2d at 680 (code enforcement officer terminated for not accepting supervision, not understanding town ordinances, and lacking the ability to perform the administrative aspects of his job); *Ryan*, 582 A.2d at 975 (police chief dismissed for "rude and disrespectful" conduct and "inability to supervise police officers"); *Chapman*, 524 A.2d at 47 (emergency dispatcher dismissed for irresponsible handling of calls).

[7] *E.g.,* Based on the Report and O'Brien's responses thereto, the Town Manager supportably found that O'Brien had made a submission to a State agency with false or unsubstantiated information that could have potentially jeopardized the Town's EMS license; that he failed to establish, maintain, and update SOPs necessary for the effective and safe management of the Fire Department; that at times he acted unprofessionally in his interactions with department members; that he had lost the confidence of employees in the Department, potentially putting firefighter and public safety at risk; and that he minimized and did not take responsibility for his actions. (R. Exs. D6; D7.)

Finally, the court is not persuaded by Petitioner's reliance on *V.S.H. Realty, Inc. v. Gendron*, 338 A.2d 143, 145 (Me. 1975) (finding an insufficient basis for a town's decision when founded "solely upon the personal opinion" of a councilor rather than substantial record evidence). Here, there was competent evidence to support the Town Manager's determination (and Select Board's affirmance thereof) to terminate Petitioner's employment as Fire Chief.

## C. EMA Director Position

O'Brien contends he was removed from his position as the Town's EMA Director without due process. Essentially, his argument is that the Town Manager's termination of him from the Fire Chief position also effectively terminated him as EMA Director since the two positions are inextricably linked and that, therefore, her action was both (i) unauthorized because the Select Board has sole authority to appoint and remove the EMA Director and (ii) violated procedural due process because it was accomplished without notice and an opportunity for hearing. Alternatively, he contends that the Select Board's action on October 2, 2018 in appointing a new EMA Director effectively terminated him and that this action was taken without a finding of just cause; without notice and hearing; and in violation of both his statutory and due process rights. The court rejects these contentions for the following reasons.

The Town Manager did not remove, or purport to remove, Petitioner from his appointed position as EMA Director. There is no reference to the EMA Director position in her June 27th notice, her August 22nd letter, the Report, or the September 27th termination letter. Nor would that have been proper. The Select Board has sole authority to appoint and remove the EMA Director. To be sure, the Town Manager's action placing Petitioner on administrative leave with respect to his Fire Chief position impacted his ability as a practical matter to carry out the associated duties of EMA

11

Director. He was expressly directed not to have contact with Town employees, not to be present at Town facilities, and to surrender any Town property in his possession. Even though the EMA Director position in Ogunquit is "collateral" to and overlaps with the Fire Chief position, it is still a distinct, independently authorized appointment subject to the exclusive authority and discretion of the Select Board. Thus, only the Select Board—and not the Town Manager—had authority to appoint an EMA Director, extend an incumbent's term in the position, or remove an incumbent from that position.

The statute governing local emergency management programs mandates that each municipality appoint an EMA Director and specifies that such director may only be removed for cause, but it does not prescribe a specific term of appointment. *See* 37-B M.R.S. §§ 781-82 (2018). Municipal EMA directors serve as municipal officers; thus, there is a presumptive one-year term of appointment *"[u]nless otherwise specified."* 30-A M.R.S. § 2601(2) (2018) (emphasis added). As noted above, the Town's charter does not establish a specific term of appointment for the EMA Director position, but the custom and practice in Ogunquit has been to review and renew the position on an annual basis. In this instance, though, in its August 2017 reappointment of Petitioner to the EMA Director position, the Select Board did "otherwise specif[y]" his term as beginning August 1, 2017 and ending June 30, 2018.

Thus, Petitioner's term as EMA Director expired on June 30, 2018. The term was not subsequently extended at any point thereafter by the Select Board. It follows, therefore, that the Select Board did not take action to remove him from the EMA position because the term of his appointment had expired on June 30, 2018. *Cf. Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 676 (Me. 1996) (differentiating removal during the term of an employment contract from nonrenewal after expiration of term). It simply did not reappoint him to the position after his term expired on June 30, 2018.

12

The remaining question is whether Petitioner was entitled him to notice, hearing and a just cause determination before the Select Board could decline to reappoint him to the EMA Director position for another term. On the basis of the record before it, the court concludes the answer is no.

A municipal employee may be entitled to due process protection in connection with a town's decision not to reappoint if it can be shown that there is (or was) a property interest in the position. *Mercier v. Town of Fairfield*, 628 A.2d 1053, 1055 (Me. 1983); *Barber v. Town of Fairfield*, 460 A.2d 1001, 1007-08 (Me. 1983). Such an interest may be established by statute; contract; "rules and mutually explicit understandings"; and/or "policies and practices" in conjunction with the foregoing. *Barber*, 460 A.2d at 1007. To claim a property interest, however, there must be "an objectively reasonable expectation of reappointment" and not a "mere subjective expectancy." *Id.* at 1008; *see also Lovejoy v. Grant*, 434 A.2d 45, 50 (Me. 1981).

The court concludes that in the particular circumstances present here there was not an *objectively reasonable* expectation of reappointment. As noted, the EMA Director position in Ogunquit is a non-salaried position with its duties subsumed under the responsibilities of the Fire Chief. In light of the interconnection between the EMA Director and Fire Chief positions and Petitioner's placement on administrative leave pending investigation with respect to his conduct as Fire Chief, it was not objectively reasonable for him to expect routine reappointment to another term as EMA Director— notwithstanding the fact that he had been reappointed to the position five times previously without a negative job evaluation.

Moreover, even though the statue provides for *removal* of EMA directors for cause, this by itself is not sufficient in the court's view to establish such a property interest with respect to reappointment to a new term. *See Barber*, 46 A.2d at 1008 (finding a

13

similar statute governing police chiefs to be insufficient without further evidence of "policy and practices" of town officials). The kinds of additional "policies and practices" or other evidence supporting an objectively reasonable expectation of reappointment are not present here to the same extent as in other cases which have considered this question.[8] While Petitioner himself may have had a subjective expectation of reappointment to the EMA Director position, such an expectation was not objectively reasonable in these circumstances.

### III. Conclusion and Order

Accordingly, the court concludes that the Town of Ogunquit's action terminating Petitioner Mark O'Brien as Fire Chief was not violative of due process and was supported by competent record evidence; and that Petitioner's rights were not violated in connection with the Town Select Board's decision not to reappoint him as EMA Director.

The entry shall be: "Petitioner's Rule 80B appeal is DENIED."

The clerk may enter this Memorandum of Decision and Order on Rule 80B Appeal the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: August 23, 2019

Wayne R. Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 8/23/19

---

[8] *See Mercer*, 628 A.2d at 1055 (recognizing an objectively reasonable expectation of continued employment by a town manager based on numerous factors, including the town's stated intention to create a contract for employment for an indefinite period; charter provisions for just cause termination; routine annual reappointments with positive performance reviews; the town council's urging of him to relocate his family; and a substantial prior salary increase); *Barber*, 460 A.2d at 1008 (remanding for further determination as to whether town officials created an objective expectation of reappointment based on "policy and practices" with respect to police chief position, including past practice of affording a hearing in connection with non-reappointment decisions).

14